GRIGG v MICHIGAN NATIONAL BANK

1. ACTION—CLASS ACTION—CERTIFICATION—COURT RULES.

Michigan court rules require that before a suit may proceed as a class action it must be certified by the trial court as a class action (GCR 1963, 208).

2. ACTION—CLASS ACTION—APPEAL AND ERROR—STANDARD OF REVIEW.

The Court of Appeals in reviewing a lower court's determination on whether an action may proceed as a class action must decide whether the trial court's determination relative to the requirements for a class action was clearly erroneous.

3. ACTION—CLASS ACTION—FEDERAL RULES OF CIVIL PROCEDURE—REQUIREMENTS FOR CLASS ACTION—COURT RULES.

Certain requirements stated in the Federal class action rule and in Federal cases which must be met in order to maintain a class action lawsuit are in the Michigan court rule which pertains to class actions by implication.

4. ACTION—CLASS ACTION—CERTIFICATION—REQUIREMENTS FOR CLASS ACTION.

There are five requirements which must be met in order to maintain a class action and failure to meet even one of the five defeats certification of the action as a class action; the requirements are: (1) numerous persons, (2) adequate representation, (3) common question of law or fact affecting the rights of the several members, (4) the class must request a common relief,

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 4, 13] 59 Am Jur 2d, Parties § 54 *et seq.*
[2] 59 Am Jur 2d, Parties § 78.
[5, 7] 59 Am Jur 2d, Parties §§ 69, 70.
[6] 59 Am Jur 2d, Parties § 63.
[8] 59 Am Jur 2d, Parties § 81.
[9] 59 Am Jur 2d, Parties § 74.
[10] 59 Am Jur 2d, Parties §§ 53, 54, 59, 73.
[11] 59 Am Jur 2d, Parties § 54.
[12] 59 Am Jur 2d, Parties §§ 78–91.

and (5) a class action must be the superior method of litigating the claim and/or manageable.

5. ACTION—CLASS ACTION—ADEQUATE REPRESENTATION—TESTS FOR ADEQUATE REPRESENTATION.

Four tests of adequate representation of a class in a class action are: (1) that the representative has an interest in a claim that is typical of the remaining claims, (2) whether the representative will vigorously prosecute the rights of the class through qualified counsel, (3) the representative plaintiff's willingness to pay for the notice to the members of the class, and (4) the relationship of the named plaintiff to the plaintiff's attorney.

6. ACTION—CLASS ACTION—REPRESENTATIVE PLAINTIFF—COMMON ISSUES AND INTERESTS—JUDICIAL ECONOMY.

The requirement that the representative plaintiff in a class action share common issues and interest with the unnamed class members is fulfilled where the claim is based on a common question of law or fact and a common relief is sought, however, the claims need not be identical in such matters as the individual amount of damages so long as common issues predominate and a judicial economy will be realized through the class action procedure.

7. ACTION—CLASS ACTION—ADEQUACY OF REPRESENTATION—NOTICE —ABSENTEE CLASS MEMBERS—COST OF NOTICE.

The test of adequacy of representation in a class action which is determined by the representative plaintiff's willingness to pay for notification to the unnamed members of the class is not satisfied where the names and addresses of the unnamed class members are known but the representative plaintiff states in a deposition that she will not pay for the mailing of notice to the members of the class.

8. ACTION—CLASS ACTION—NOTICE—PUBLICATION NOTICE—DUE PROCESS.

Notice by publication to absentee class members of a pending class action does not satisfy due process requirements where the names and addresses of the absentee members are known.

9. ACTION—CLASS ACTION—NAMED PLAINTIFF—RELATIONSHIP TO ATTORNEY—SOLICITATION.

Examination of the relationship of the named plaintiff to the plaintiff's attorney is a means of testing the adequacy of the named plaintiff's representation of the entire class in a class action; where discovery and other evidence give every indication that a class action is the result of an attorney's effort to

seek out a person willing to have a class action instituted in his name as the representative of a class such action constitutes an abuse of the class action.

10. Action—Class Action—Superior Method of Litigating Claim —Disproportionate Damages—Inefficient Means of Litigation—Actual Proof of Claims—Due Process.

A class action is not a superior method of litigating a plaintiff's claims where (1) there is a possible class recovery which threatens annihilating punishment to the defendant in the face of minimal actual damages to the plaintiff, (2) the class action would be an inefficient or judicially uneconomic means of adjudicating the plaintiff's claims because it could result in thousands of counterclaims being asserted by the defendant, or (3) the due process requirements of actual proof of certain aspects of each individual claim make the action entirely unmanageable as a class action.

11. Action—Class Action—Manageability Requirement.

A case may not be maintained as a class action unless it is manageable; a class action should be dismissed where it is so complex or unmanageable as to be beyond the court to administer; a class action is unmanageable where it would require the court to manually examine the billing records for a 24-month period of over 751,000 potential plaintiffs.

12. Action—Class Action—Substantive Rights.

The procedural device of a class action cannot be used to erode the substantive rights of a defendant.

13. Action—Class Action—Certification as Class Action—Findings on Merits.

As a general rule a trial court should determine, shortly after a class action is filed and after discovery, whether a class action can be maintained before there is any finding on the merits, however, there may be instances where considerations of judicial economy will dictate that at least a partial ruling on the merits should precede certification of the class action.

Appeal from Ingham, James T. Kallman, J. Submitted June 3, 1976, at Lansing. (Docket No. 25038.) Decided November 22, 1976.

Complaint by Sarah Grigg, for herself and on

behalf of others similarly situated, against Michigan National Bank seeking damages double the amount of interest paid in connection with credit card charges. Plaintiff's motion for confirmation of the suit as a class action was denied and judgment was entered dismissing the action. Plaintiff appeals. Affirmed.

*George Kratchman* and *Ronald J. Prebenda,* for plaintiffs.

*Fraser, Trebilcock, Davis & Foster* (by *Everett R. Trebilcock* and *Michael E. Cavanaugh),* for defendant.

Before: ALLEN, P. J., and D. E. HOLBROOK, JR., and E. H. PAPP,* JJ.

E. H. PAPP, J. Plaintiff, Sarah Grigg, individually and on behalf of persons similarly situated, instituted a civil action against Michigan National Bank in connection with credit card charges. On May 30, 1975, the trial court issued a written opinion in which it found that a class action could not be maintained by the plaintiff. Plaintiff appeals by right under GCR 1963, 806.1.

*Background*

On June 3, 1971, plaintiff Sarah Grigg, a Michigan BankAmericard customer, who had paid interest/service charges in connection therewith since 1967, brought this action against Michigan National Bank to enjoin the defendant from violating the usury law in connection with its BankAmericard program and to recover damages as pro-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

vided by the National Bank Act, 12 USC 85, 86. The plaintiff alleged in her complaint that the defendant had violated and was then violating the Banking Code of 1969 (MCLA 487.491; MSA 23.710[191]),[1] with respect to the computation of interest charges on bank credit cards, and that as a consequence thereof had violated and was violating the National Bank Act.

The case was brought before circuit Judge Sam Hughes in 1971. In November 1972, Judge Hughes decided that the action could not be maintained as a class action under 12 USC 86, as a matter of law. On appeal to this Court, the judgment was reversed and remanded to the trial court for "further proceedings relating to the establishment by plaintiff of all the other requirements". *Grigg v Michigan National Bank,* p 4 (Docket No. 15891, decided June 22, 1973 [unreported]), *lv den,* 390 Mich 810 (1973), *cert den,* 419 US 840; 95 S Ct 70; 42 L Ed 2d 67 (1974). Thereupon, the case was returned to the Ingham County Circuit Court for resolution by Judge Hughes' successor, Judge James T. Kallman. After another round of motions and arguments, Judge Kallman ruled on the propriety of a class action before deciding the merits, in view of what this Court stated on remand. The · attorneys for both parties agreed that it was the logical approach although plaintiff's attorney expressed some reservation.

On May 30, 1975, the trial court found that the plaintiff could not maintain the class action for a number of different reasons. The court also found that plaintiff Grigg's individual claim did not satisfy the amount required for circuit court jurisdiction and ordered the case transferred to the dis-

[1] Amended by 1974 PA 192.

trict court or dismissed. Plaintiff elected to have the case dismissed so she could appeal to this Court. On July 23, 1975, plaintiff filed her appeal. At this point it should be noted that plaintiff's brief spends a great deal of time stating facts relevant to a determination of the merits of this case. However, the only question decided by the trial court was whether or not plaintiff's suit met the requirements of a class action. Accordingly, we limit ourselves to the issue decided by the trial court. Additional facts bearing on that issue will be related where necessary.

### Did the trial court err in refusing to certify the instant case as a class action?

Plaintiff's complaint filed on June 3, 1971, charged defendant bank with violation of the Michigan usury law, MCLA 487.491; MSA 23.710(191), and demanded damages double the amount of the interest paid by petitioner and her class under 12 USC 86.[2] Five years have gone by and there has been no trial on the merits of these claims. Both parties and the courts are still struggling with the complex question whether or not plaintiff's suit can be maintained as a class action. Plaintiff bases her action upon three theories or acts by the defendant which she alleged increased

[2] 12 USC 86 provides: "The taking, receiving or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representative, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same: *Provided,* that such action is commenced within two years from the time the usurious transaction occurred."

the interest charged by the defendant beyond the legal limit.[3]

If this suit is to proceed as a class action it must be certified under GCR 1963, 208.[4] At the outset we should state that the Federal courts, in reviewing a trial court's determination that a class action cannot be maintained, will reverse only for an abuse of discretion. *King v Kansas City Southern Industries, Inc,* 519 F2d 20, 25 (CA 7, 1975), *Clark v Watchie,* 513 F2d 994, 1000 (CA 9, 1975), *cert den,* 423 US 841; 96 S Ct 72; 46 L Ed 2d 60 (1975), *Wetzel v Liberty Mutual Insurance Co,* 508 F2d 239, 245, n 6 (CA 3, 1975), *cert den,* 421 US 1011; 95 S Ct 2415; 44 L Ed 2d 679 (1975), *Wilcox v Commerce Bank of Kansas City,* 474 F2d 336, 347 (CA 10, 1973). Since GCR 1963, 208 was modeled on the old FR Civ P 23, it would be logical to apply the same abuse of discretion standard. However, in *Northview Construction Co v St Clair Shores,* 44 Mich App 614, 622; 205 NW2d 895 (1973), this Court appeared to adopt the "clearly erroneous" test of GCR 1963, 517.1, for lower court findings of fact. Our Supreme Court, while reversing this Court in a 3-1 decision with three justices not participating, said that "there was not sufficient evidence to support the circuit court and the Court of Appeals finding of inadequacy of representation". *Northview Construction Co v St Clair Shores,* 395 Mich 497, 515; 236 NW2d 396 (1975).[5]

---

[3] The three theories are computing the service charge at a daily rate of .0493%, which she claims results in a charge in excess of the lawful rate in 31-day months, compounding interest by adding unpaid finance charges into the unpaid balance, and charging a finance charge of 1.5% for about three months in 1969 before the Banking Code of 1969 specifically authorized bank credit cards with monthly finance charges of 1.5%. MCLA 487.491; MSA 23.710(191).

[4] GCR 1963, 208 in substance adopted FR Civ P 23, which has become the most widely followed pattern for the development of rules on class actions. Rule 23 was revised in 1966. The Michigan Supreme Court has made no revision since GCR 208 was adopted in 1963.

[5] The Supreme Court has granted rehearing, 395 Mich 924 (1976).

We are puzzled because the sufficiency of the evidence argument should not be raised in a non-jury case due to GCR 1963, 517.1 and its clearly erroneous standard. Nonetheless, whatever its meaning, it appears that some form of the clearly erroneous standard is appropriate in reviewing a Michigan trial court's determination that a class action can or cannot be maintained. Since this Court remanded this action to the trial court "for further proceedings relating to the establishment by plaintiff of all other requirements of a class action under our statutes and rules of court", it is therefore necessary to determine what the requirements of a class action are and whether the trial court's determination relative to those requirements was clearly erroneous.

GCR 1963, 208 reads in relevant part:

"Representation. If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, 1 or more, as will fairly insure the adequate representation of all may on behalf of all sue or be sued when the character of the right sought to be enforced for or against the class is

\* \* \*

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

In addition to the above requirements, others are stated in the Federal class action rule, and we believe by implication, common sense and reason in the Michigan rule. One such requirement is that a class action be the superior method of litigating the claims, which entails determining the incentives for individual suits, the nature of the alleged violation of law, whether the harm to the defendant is disproportionate to the damage

done to the plaintiffs, and whether the class action is manageable. *Ratner v Chemical Bank New York Trust Co,* 54 FRD 412 (SD NY, 1972), *Partain v First National Bank of Montgomery,* 467 F2d 167 (CA 5, 1972).

As we view it, there are five requirements under the Federal cases that must be met in order to maintain a class action. Failure to meet even one of the five defeats certification. They are: 1) numerous persons, 2) adequate representation, 3) common question of law or fact affecting the rights of the several members, 4) class must request a common relief, and 5) class action must be superior and/or manageable.

In GCR 1963, 208, there is no express requirement of superiority and manageability. However, we believe that it exists by implication. In dealing with the representation issue, our Supreme Court in *Northview, supra,* at 509, stated that a class action could be maintained "so long as common issues predominate and *a judicial economy* will be realized through the class action procedure". (Emphasis added.) Citing *Partain v First National Bank of Montgomery, supra.* We shall address ourselves to those requirements.

The *first requirement* that the suit must involve numerous persons so as to make it impracticable to bring them all before the court, is met. Neither party disputes that approximately 751,518 potential plaintiffs are sufficient.

The *second requirement* is adequate representation. A reading of the cases indicate that there are a number of *tests* as to adequate representation: 1) that the representative has an interest in a claim that is typical of the remaining claims, 2) whether the representative will vigorously prosecute the rights of the class through qualified counsel, 3)

plaintiff's willingness to pay for the notice to the members of the class, and 4) the relationship of the named plaintiff to the plaintiff's attorney.

In *Northview,* our Supreme Court mentions only two tests of adequacy. The first test, whether the representative shares common issues and interest with the unnamed class members, we believe is very similar to general requirements 3 and 4, specifically the common question of law or fact, and common relief. These apparently overlap. As noted, plaintiff challenges the bank's computation of interest and/or finance charges under three theories. Plaintiff claims that the issues are common to the class in that most, if not all, of the credit cardholders were affected by the computation methods. On the other hand, defendant argues that plaintiff's issues are merely superficially common, and even if the plaintiff prevailed on all three of her theories, the court would have to look at the specific facts surrounding each member of the class to determine if any overcharge had been made under any of the three theories put forth by plaintiff. The argument is over the level of generality (or specificity) which GCR 1963, 208.1(3) requires in a common issue of law or fact. The problem is not easily resolved; both counsel cite numerous authorities for their positions in an attempt to distinguish contrary authorities. We believe either position is tenable, depending on which line of authority and which distinctions a court prefers. However, the answer to the question is properly found in Michigan case law. In *Northview,* the three justices state in part:

"This first adequacy of representation requirement is fulfilled by representatives who have an interest in a claim that is typical of the remaining class claims. Under GCR 1963, 208.1(3), a claim is typical when it is

based on 'common question of law or fact * * * and a common relief is sought'. The claims need not be identical in such matters as the individual amount of damages. *Foster v Detroit,* 254 F Supp 655, 667–669 (ED Mich, 1966), *aff'd* 405 F2d 138 (CA 6, 1968); *Oppenheimer v F J Young & Co,* 144 F2d 387, 390 (CA 2, 1944), so long as common issues predominate *and a judicial economy will be realized through the class action procedure.*

\* \* \*

"Each class claim raises a common issue concerning the legality of the building permit fees and each claim can be satisfied by a monetary refund." *Northview Construction Co, supra,* at 509–510. (Emphasis added.)

Therefore, on the basis of *Northview* we reluctantly hold that the plaintiff in the instant litigation possesses claims typical of the class of those persons required to pay interest/service charges for the use of the bank's credit cards. But the real problem of how general or how specific the common question of law or fact would surely arise with a tremendous impact if the case ever came to trial.

The *second test* of adequacy of representation, is whether the representative will vigorously pursue the rights of the class through qualified counsel. Defendant does not challenge the adequacy of plaintiff's counsel nor the plaintiff's spirit.

A *third test* of adequacy is often stated as plaintiff's willingness to pay for notification to members of the class. Under FR Civ P 23, as amended, such notification is necessary to satisfy "due process". *Eisen v Carlisle & Jacquelin,* 417 US 156; 94 S Ct 2140; 40 L Ed 2d 732 (1974) (hereinafter referred to as *Eisen III).* In *Eisen III,* the Supreme Court dismissed the eight-year old case on the basis that plaintiff was unwilling to pay the cost of notice where the names and addresses of two million

class members were known or easily ascertainable. The Supreme Court pointed out that in *Mullane v Central Hanover Bank & Trust Co,* 339 US 306; 70 S Ct 652; 94 L Ed 865 (1950), it addressed the constitutional sufficiency of publication notice rather than mailed individual notice to known beneficiaries of a common trust as part of a judicial settlement account. It further stated that notice and an opportunity to be heard were fundamental requisites of the constitutional guarantee of procedural due process, and that notice must be reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Continuing, the Court quoted from *Mullane:*

"But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected." *Eisen III,* 417 US at 174; 94 S Ct at 2151; 40 L Ed 2d at 746–747.

The United States Supreme Court held, in *Mullane,* that publication notice could not satisfy due process where the names and addresses of the beneficiaries were known. It went on to say "in such cases, 'the reasons disappear for resort to means less likely than the mails to apprise them of [an action's] pendency' ". 417 US at 174–175; 94 S Ct at 2151; 40 L Ed 2d at 747. The court in *Eisen III* then referred to its decision in *Schroeder v City of New York,* 371 US 208; 83 S Ct 279; 9 L Ed 2d 255; 89 ALR 2d 1398 (1962), which as the U. S.

Supreme Court pointed out was decided *prior* to the promulgation of the amended FR Civ P 23, and explained that *Mullane* required rejection of notice by publication where the names and addresses of the affected persons were available. The general rule, said the Court, is that notice by publication is not enough with respect to a person whose name and address was known or very easily ascertainable, and that notice by publication had long been recognized as a poor substitute for actual notice and that its justification was "difficult at best".

However, our Supreme Court has stated in *Northview* that this question does not take on due process dimensions. We respectfully point out the latest pronouncement on notice to absentee members of a class is clearly stated in *Eisen III*, which is applicable to the old FR Civ P 23 and the new FR Civ P 23 and our own GCR 1963, 208. In her deposition plaintiff Grigg states that she will not pay for the mailing of notice to the members of the class and, therefore, in our opinion, fails this test of adequate representation.

The *fourth test* of adequacy, not mentioned in *Northview* but rapidly being accepted across the nation, concerns the relationship of the named plaintiff to the plaintiff's attorney. In reading the cases we find that courts have become skeptical of the adequacy of a plaintiff's representation when the plaintiff is also the attorney for the class or someone closely associated with the attorney. The problems involved include solicitation of litigation and conflict of interest. Where there is evidence of solicitation the Federal courts have dismissed class actions. In *Cotchett v Avis Rent A Car System, Inc,* 56 FRD 549 (SD NY, 1972), the named plaintiffs included an attorney for the class and the husband of the secretary of one of the attorneys, *Shields v First National Bank of Arizona,* 56 FRD

442 (D Ariz, 1972), and *Shields v Valley National Bank of Arizona,* 56 FRD 448 (D Ariz, 1971), wherein the named plaintiff was also the attorney for the class. In *Reports of the Conference for (Federal) District Court Judges,* 64 FRD 475, 509–510 (1974), several Federal judges agreed that dismissal of class actions was appropriate "where it appeared that the suit was launched for the legal fees alone, with several lawyers' secretaries as the purported 'class' in a credit card case".

Apparent conflicts of interest have also led to dismissals of class actions by Federal courts. See, *e.g., Stull v Pool,* 63 FRD 702 (SD NY, 1974), wherein the named plaintiff was the wife of one of the attorneys in the firm representing the class, *Kriger v European Health Spa, Inc, of Milwaukee, Wisconsin,* 56 FRD 104 (ED Wis, 1972), wherein the named plaintiff was an associate with the law firm representing the class, *Graybeal v American Savings & Loan Association,* 59 FRD 7 (D DC, 1973), wherein the named plaintiffs included a group of attorneys and their wives.

In reading plaintiff Grigg's deposition we find she is the secretary of two of the three attorneys bringing this action. In her deposition she states that prior to her decision to commence this action, she engaged in discussions with her attorney-employer about credit cards in general and the manner in which the issuers of credit cards were computing interest. She testified she was interested in credit cards prior to this action because her law firm had commenced six other credit card cases.[6] In fact, plaintiff's husband is the plaintiff in

---

[6] Records of Wayne Circuit Court disclose at least seven other actions brought by plaintiff's attorney and commenced shortly before or at about the same time this case was commenced:

*Richard Grigg v Robinson Furniture Co* Wayne Cir Ct #163344

*John Cicelski v Sears Roebuck & Co* Wayne Cir Ct #163524

one of those actions brought by her employer. She further testified that she did not think about bringing an action against BankAmericard until after she became aware of the other class actions pending in her office. One of those cases was the *Palmer* case which involved the same allegations as those against the defendant Michigan National Bank issuing BankAmericards. We note that the *Palmer* case and the instant case were filed in the Wayne Circuit Court simultaneously bearing #182282 and #182283.[7]

We agree with counsel for the defendant that it is highly unusual that two separate banks were violating the interest laws in the same manner and that both plaintiffs would take their complaint to the same lawyer. A class action was dismissed in *Simon v Merrill Lynch, Pierce, Fenner & Smith, Inc,* 16 FR Serv 2d 1021, 1022 (ND Tex, 1972), *aff'd* 482 F2d 880 (CA 5, 1973), where the court found:

"From the discovery in this action and from the testimony of the plaintiff himself, there is every indication that this action is the result of an effort to seek out a person willing to have a class action instituted in his name as representative of a class. * * * Such activity constitutes an abuse of the class action, which courts should not permit."

In *Cotchett v Avis Rent A Car System, Inc, supra,* the court refused to permit a case to proceed as a class action where one of the named

---

*John Cicelski v Montgomery Ward & Co* Wayne Cir Ct #163525
*Jose L. Reyes v E. J. Korvette, Inc* Wayne Cir Ct #165917
*John J. Murphy v Winkleman Stores, Inc* Wayne Cir Ct #165918
*Frank J. Mallon v Federal's Inc* Wayne Cir Ct #166215
*Sarah Grigg v Michigan National Bank* Wayne Cir Ct #182282
*Palmer v Security Bank & Trust Co* Wayne Cir Ct #182283

[7] The instant case was originally filed in Wayne Circuit Court and, on motion for change of venue, was transferred to the Ingham Circuit Court.

plaintiffs was the husband of the secretary of one of the attorneys involved. The court dismissed the class action saying:

"In sum, in the process of encouraging litigation, a class action also invites solicitation, a factor which has led at least one federal judge to comment:
" 'Although some courts say these claims are not brought because plaintiffs believe the potential recovery would be too small to justify the time and expense of litigation, the plain truth is that in many cases Rule 23(b)(3) is being used as device for the solicitation of litigation. This is clearly an "undesirable result" which cannot be tolerated.' *Buford v American Finance Co,* 333 F Supp 1243, 1251 (ND Ga 1971)." 56 FRD at 554.

Recently the Michigan State Bar Grievance Administrator has had the opportunity to pass upon the propriety of an attorney bringing a class action on behalf of a group of his employees or ex-employees. The Grievance Administrator ruled that the practice clearly violated the Disciplinary Rules of the Code of Professional Responsibility adopted by the Michigan Supreme Court.[8]

Taking all these facts together, and applying the tests of adequacy certainly raises questions of solicitation and conflict of interest. The trial court apparently inferred from these facts and others that plaintiff Grigg was not an adequate representative. If we apply the Federal abuse of discretion standard, we can find none. If we apply the clearly erroneous standard we still cannot say the trial court erred. The evidence contradicting the appearance of solicitation and conflict of interest does not clearly preponderate.

The *third* and *fourth* requirements for certifica-

---

[8] *See* letter of November 13, 1974, of Richard Senter, Grievance Administrator in re: *Tana Marie Hobart et al v The Kroger Co,* US District Court case #39620 (ED, Mich).

tion, that a class must have a common question of law or fact affecting the rights of the several members, has been discussed by this Court under the second test for adequate representation.

The *fifth requirement* demands that the class action must be a superior method of litigating plaintiff's claims. *Ratner v Chemical Bank New York Trust Co, supra.* This requirement is carried over from the current FR Civ P 23(b)(3), and is not specifically mentioned in Michigan cases but this Court views it as an implicit requirement for maintaining a class action under the Michigan rule. The trial court found the present class action not to be superior under the rationale of *Ratner.*

In the case at bar there are several reasons why a class action would not be a superior method of adjudicating the issues involved. First, there is a possible class recovery which threatens annihilating punishment to the defendant of approximately $33 million. On the other hand the actual damages caused by the alleged excess interest charged to plaintiff Grigg was seven cents in one month.[9] Class actions are inappropriate where the size of the potential class would result in ridiculously high or ruinous damages, utterly unrelated to the actual harm caused by the violations. Second, the class action would be an inefficient or "judicially uneconomic" means of adjudicating the case at bar. *Northview Construction Co, supra.* It would involve defaulted or delinquent credit cardholders, of which defendant bank has 20,000 on which counterclaims may be asserted. Thus, this case would turn into a wholly unmanageable proceeding. Finally, there would be substantial difficulty

[9] Plaintiff selects the December 1971–January 1972 billing period as an example. She claims that she also was overcharged in other billing periods, and therefore her total claimed overcharge for the entire two years would be greater than seven cents.

encountered by the parties in proving various members of the class used their credit cards primarily for business rather than for personal use. And as defendant bank claims, they have a "due process" right to require proof as to whether the primary use of the credit cards during the entire 24 months in question was personal or business from each of the 751,518 persons holding credit cards. The necessity for such proof makes this action entirely unmanageable. A shorter route may well deprive defendant bank of "due process".

Any one of the above reasons is sufficient in and of itself to indicate that plaintiff fails to meet the requirements necessary in a class action, particularly the superiority and manageability requirements. Our Supreme Court has ruled that judicial economy must be realized through the class action procedure. However, a more thorough discussion is necessary to show why the instant case is judicially uneconomic. In 1972, the American College of Trial Lawyers filed its *Report and Recommendations of the Special Committee on Rule 23 of the Federal Rules of Civil Procedure,* based on the uses and abuses of the rule in actual practice. The conclusion of this committee was that FR Civ P 23 as written and applied over the last half decade had failed to achieve its purposes, and "that in the areas of judicial economy and fairness to the parties, the experienced results have been directly contrary to the intended purposes. The (b)(3) class suit has mandated heavy expenditures of judicial time, effort and expense. The expenditures have been sustained only by sacrificing procedural and substantive fairness to the party opposing the class. Nor does it appear that these burdens can in any sense be justified by the limited benefits accruing to the class claimants." See report dated

March 15, 1972, p 6. This Court finds itself in substantial agreement with the conclusion reached by the special committee.

One of the most important tests under the superiority requirement is manageability. It is a fundamental principle of class action law that a case may not be maintained unless it is manageable. This requirement stems from the basic right of all of the parties involved in a class action to the full protection of due process of law. It also finds its source in the common sense of the judiciary. Courts have recognized that a class action should be dismissed where it is so complex or unmanageable as to be beyond the court to administer.

As herein noted, plaintiff has alleged three acts by the defendant bank which she claims increased the interest paid by the credit cardholders beyond the legal limit. A study of the record and briefs indicates the Court cannot determine as an abstract point of law whether any of these three acts or theories increased beyond the legal limit the interest (finance charges) actually paid by any cardholder. It would be necessary for the Court to examine the account of each of the 751,518 persons in the class for each of the 24 months covered by this lawsuit to determine whether or not the rate of interest was increased beyond the lawful rate under each of plaintiff's three theories. A careful reading of the briefs and arguments before this Court shows that the defendant bank, like major credit card systems, does not bill or compute finance charges on a monthly basis. Bills are prepared and mailed on a "billing cycle" basis rather than on a calendar month basis because it would be physically impossible to bill, handle and mail all of the statements on one day of the month. Defendant bank has 20 separate billing cycles,

each with their own billing dates and each billing being affected differently by Sundays and holidays. Further, in every billing period we are informed approximately 1/3 of all credit cardholders paid their balance in full and thus did not incur finance charges. Assuming plaintiff's 31-day theory is valid, there would be no way of knowing whether any cardholder in fact ever did pay a service charge higher than 1.5% in a 31-day month, except by manually examining the bank's Service Charge Journal, for each of the 751,518 customers in each of the 24 months involved.[10]

We agree that the procedural device of a class action cannot be used to erode the substantive rights of the defendant, and allowing gross damages by treating unsubstantiated claims of class members collectively significantly alters substantive rights. See *In re Hotel Telephone Charges,* 500 F2d 86, 90 (CA 9, 1974). Defendant bank, after a test run, estimates that it would take 330 years and, even if the Court appoints special masters, the process would take at least 8-1/4 years to complete on plaintiff's first theory alone. In *Federated Dept Stores, Inc v Pasco,* 275 So 2d 46 (Fla App, 1973), a case almost identical to the case at bar, the court realized that to permit the case to proceed as a class action would place an impossible

---

[10] The Service Charge Journal summarizes the activity in a customer's account during a billing cycle, and is kept on microfilm rolls. There is no access to this or any other microfilm records by computer or data processing at defendant bank, the information can only be obtained from the microfilm records by manually examining them through microfilm viewing machines. During argument before this Court defendant bank produced an exhibit of poor quality, and informed the Court it was due to the state of development of the microfilm industry prior to 1972, and therefore could not be used to make legible "hard copies" or "print out sheets". It would take hundreds of years to retrieve such information and, at some time, at some point, each member of the class who wants to recover from the defendant will have to come forward in court and prove his or her claim.

burden on the court. In dismissing the case, the court said:

"If the instant case proceeds as a class action the court will be faced with the realities of an impossibly complex case. The court will have to separately analyze hundreds of thousands of separate, individual revolving charge accounts to determine whether the interest received by defendants was greater than that permitted. This sort of virtually insurmountable accounting problem produces the type of complexity which renders a class action the least rather than the most expeditious method of handling the claims of different customers. Cf, *Hackett v General Host Corporation,* 455 F2d 618 (CA 3, 1972); *Schaffner v Chemical Bank,* 339 F Supp 329 (SD, NY 1972)." 275 So 2d at 49–50.

Defendant confronts us with another point which would further increase the complexities and the time required for litigation. This factor is the concept of "free ride" which means that the customer has the free use of the defendant bank's money from the date payment is required. In defendant's BankAmericard system the customer can have free use of the money for a period of days, up to a maximum of 54 days, depending on the date of the purchase. No finance (service) charge is charged the customer if a statement is paid in full within 25 days of the billing date. The trial court would again be faced with the tremendous task of manually viewing and extracting the "free ride" information from each of the 751,518 customers' records. We note that the free ride factor could be relevant in determining the net effective service charge rate, *i.e.,* the rate paid taking into account any compounding of interest and any free ride factor.

We hold that plaintiff's third theory is also unmanageable for the same reasons her other two

theories are unmanageable. Again, the trial court would have to determine what the lawful rate was, if not 1.5%, and then determine the actual effective rate paid by each member of the class after considering the free ride factor.

Plaintiff Grigg purports to represent "all other customers of the Michigan National Bank, who incurred interest charges pursuant to their use of Michigan Bankcard and Michigan BankAmericard credit cards". However, defendant argues that there are a number of subgroups that must be first excluded from the class, since MCLA 450.78; MSA 21.78[11] authorizes corporations to pay any rate of interest without regard to the usury laws, and MCLA 438.61; MSA 19.15(71), which became effective July 10, 1970, authorizes any "business entity" to agree with a bank to pay any rate of interest. The statute defines business entity as meaning any corporation, trust, estate, partnership, cooperative or association or any natural person, if the person furnishes the bank a sworn statement that the loan will be used for business purposes. Once again, the burden would fall on the Court to manually review all 751,518 accounts, to exclude corporations or business entities, and to determine if an individually owned card was used for a business purpose. See *Berkman v Sinclair Oil Corp,* 59 FRD 602 (ND Ill, 1973).

Another class definition problem arises as to the more than 165,000 accounts by the defendant bank from various merchants. Finally, the defendant bank claims there are at least 20,000 counterclaims they would assert against delinquent accounts or those who have defaulted. See *Berkman v Sinclair Oil Corp, supra,* at 609. Professor Milton Handler, a recognized scholar and authority on

[11] Repealed by 1972 PA 284; now MCLA 450.1275; MSA 21.200(275).

class actions, offered the following guidance, which the court in *Schaffner v Chemical Bank,* 339 F Supp 329, 337 (SD NY, 1972), followed:

" 'What one rarely encounters is a hard-nosed appraisal of the actual effects of massive class actions on both court and litigants. * * *

" 'Thus, as a matter of policy, class actions should not be allowed where the costs of administration, including attorneys' fees, are disproportionate to the probable benefits to individual class members and where the class action will put unmanageable burdens on the federal court.' 71 Col L Rev 1, 6, 12 (1971)."

We believe the cases cited by plaintiff are distinguishable and not controlling. *Zachary v Chase Manhattan Bank,* 52 FRD 532 (SD NY, 1971), allowed a class action involving bank credit cards but the court, in reaching its decision that the case was manageable, specifically relied upon the district court's opinion in *Eisen III* which was later reversed by the Second Circuit Court of Appeals and the United States Supreme Court. The same applies to *Partain, supra.* Further, the *Partain* court allowed the case to proceed as a class action on the assumption that the defendant could be required to pay the cost of sending notice to the class. However, as noted in *Eisen III,* notice must be paid by the plaintiff and if she is unwilling, then the case must be dismissed. Plaintiff also cites *Acker v Provident National Bank,* 512 F2d 729 (CA 3, 1975). But, on remand, the district court in a decision dated September 17, 1975, denied class action certification under FR Civ P 23 because the administrative burdens and expense of retrieving the information necessary and relevant to a determination of class certification was great in magnitude when contrasted with the relatively

insubstantial amount which defendants are alleged to have overcharged their cardholders, as well as the defendant's liability under 12 USC 86. In addition, the court said the class action was not the superior method for achieving the fair and efficient adjudication of the controversy, and finally it denied injunctive relief because the defendant bank terminated the wrongful conduct prior to the institution of the suit. Plaintiff also cites *Haas v Pittsburgh National Bank,* 526 F2d 1083 (CA 3, 1975). The circuit court of appeals has remanded the case to the district court to determine if plaintiff was or was not a proper class representative. Both *Acker* and *Haas* were class action cases against national banks for alleged usury as in the case at bar.

In *Considine v Park National Bank,* 64 FRD 646 (ED Tenn, 1974), the court refused to certify the case as a class action against a national bank for usury in connection with its credit card customers. See also *Pasco, supra, In re Telephone Charges, supra,* and the Second Circuit Court of Appeals ruling in *Eisen III.* We do not believe that the cases cited by plaintiff Grigg reflect the present judicial assessment of massive class actions. The case at bar involves 751,518 credit cardholders, with subgroups, each with separate issues to be resolved, with approximately 20,000 counterclaims and each seeking different damages.

## Conclusion

We hold that shortly after a class action is filed, and after discovery, a trial court should usually first determine whether a class action can be maintained before any findings on the merits. See *Reports of the Conference for (Federal) District Court Judges, supra,* p 510, *Federated Dept Stores,*

*Inc v Pasco, supra, Sprogis v United Air Lines, Inc,* 56 FRD 420 (ND Ill, 1972), *Home Savings & Loan Association v The Superior Court of Los Angeles County,* 42 Cal App 3d 1006; 117 Cal Rptr 485 (1974), *Eisen III,* 417 US at 177–178; 94 S Ct 2152, 2153; 40 L Ed 2d 748, 749. There may, however, be instances where considerations of judicial economy will dictate that at least a partial ruling on the merits should precede certification of the class. As the court in *Halverson v Convenient Food Mart, Inc,* 69 FRD 331, 337 (ND Ill, 1974), said:

"Class certification can be made at such time and under such circumstances as will best fit the needs of a particular case. The greater the number of individual questions which must be tried, the greater becomes the probability that *judicial economy* is better served by collateral estoppel." (Emphasis added.)

In this case, the ultimate unmanageability of all possible damage remedies required adherence to the general rule that the class certification question should be addressed first.

This Court has been informed by counsel for both parties that the acts plaintiff claims were illegal were stopped in February of 1972 when the defendant bank changed its method of computing charges. The Second Circuit Court of Appeals in *Eisen III,* 479 F2d 1005, 1020 (CA 2, 1973), has set forth a guideline to the courts and litigants when it said, "The procedure involved in applying for prospective injunctive relief is relatively simple and inexpensive, social and economic reforms may be implemented and an end put to illegal practices with far more benefit to the community than that derived from minimal or token payments to individual members of a class." We heartily endorse that statement.

Since plaintiff has failed to meet all the requirements necessary to maintain a class action, particularly the adequate representation and superiority and manageability requirements, her class action cannot be maintained.

Affirmed. Costs to defendant.