OAKWOOD HOMEOWNERS ASSOCIATION, INC. v FORD MOTOR
COMPANY

OPINION OF THE COURT

1. ACTION—CLASS ACTIONS—COURT RULES—COMMON QUESTION—
COMMON RELIEF.

Class action practice under Michigan law contains no require-
ment that common class questions predominate over issues
unique to individual plaintiffs; the court rule requires a request
for common relief and the presence of a common question of
law or fact affecting the several rights (GCR 1963, 208.1[3]).

2. ACTION—CLASS ACTIONS—SPURIOUS CLASS ACTIONS—PERMISSIVE
JOINDER—COMMON QUESTION.

A "spurious" class action is merely a permissive joinder device in
which the right and the liability of each individual plaintiff are
distinct; the class is formed solely by the presence of a common
question of law or fact, and there is no jural relationship
among the members of the class.

3. ACTION—CLASS ACTION—AIR POLLUTION—COMMON QUESTION.

The questions of whether the defendants in a suit for relief from

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 12] 59 Am Jur 2d, Parties § 63.
[2, 7, 11] 59 Am Jur 2d, Parties §§ 51, 62.
[3] 61 Am Jur 2d, Pollution Control §§ 51, 128.
[4, 15] 59 Am Jur 2d, Parties § 64.
[5] 59 Am Jur 2d, Parties §§ 47, 67.
[6] 59 Am Jur 2d, Parties § 59.
[8] 59 Am Jur 2d, Parties § 65.
[9] 29 Am Jur 2d, Evidence § 133.
  74 Am Jur 2d, Torts § 72.
[10] 61 Am Jur 2d, Pollution Control § 135.
[12] 59 Am Jur 2d, Parties § 78.
[13] No Reference
[14] 59 Am Jur 2d, Parties § 54.
[16, 20, 21] 61 Am Jur 2d, Pollution Control § 129.
[17] 58 Am Jur 2d, Nuisances §§ 41–43.
[18] 58 Am Jur 2d, Nuisances § 113.
[19] 58 Am Jur 2d, Nuisances § 1.

and damages for air pollution brought by adjoining landowners violated the law by the discharge into the air of certain gases and particulate matter and whether the defendants' operations create stenches which contaminate the atmosphere to such an extent as to substantially impair the comfort or enjoyment of adjacent premises are issues common to all members of the class bringing the suit, and are questions ably suited for resolution as a class action.

4. ACTION—CLASS ACTIONS—SPURIOUS CLASS ACTIONS—COMMON RELIEF—TYPE OF RELIEF SOUGHT.

The requirement that a spurious class action must include a request for a common relief covers cases where the same type of relief is being sought for or against all members of the class; the fact that members of the class may have claims for varying amounts of damages does not prevent the use of the spurious class action to the extent of the common relief sought.

5. ACTION—CLASS ACTIONS—DUE PROCESS—NUMBER OF CLAIMANTS—COURT RULES.

Defendants are not deprived of due process rights by reason of the bringing of a class action against them because trial would not be unmanageable where the class consists of a maximum of 72 claimants who are owners and occupiers of land in a relatively compact area, actual notice can easily be achieved, absent class members are neither bound by the litigation nor obliged to opt out of the action, and the court rules do not require that the class suit be superior to other modes of adjudication (GCR 1963, 208.1[3]).

6. ACTION—CLASS ACTIONS—PARITY OF ISSUES—LIABILITY.

A class action may be maintained where there is a substantial parity of issues regarding liability; other issues which distinguish the individual claimants may be considered separately after resolution of the common questions of liability.

7. ACTION—CLASS ACTIONS—SEVERANCE OF PARTIES—COURT RULES—PERMISSIVE JOINDER.

The court rule under which a spurious class action may be brought serves merely as a permissive joinder device and severance of parties or claims in the action can be effected by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just (GCR 1963, 207, 208.1[3]).

8. ACTION—CLASS ACTIONS—JUDICIAL ECONOMY—COMMON ISSUES.

Judicial economy and convenience to the litigants are better

served by permitting a suit to proceed as a class action than by requiring separate suits where there are common issues and where the large number of claimants, defendants, and witnesses would require several months of trial time if separate trials were held.

9. Torts—Joint Tortfeasors—Apportionment of Liability.

The burden of apportioning liability among respective tortfeasors is on those tortfeasors where the factfinder has found several defendant tortfeasors jointly responsible for an indivisible injury to the plaintiffs.

10. Action—Class Action—Separate Trials—Air Pollution—Mixture of Contaminants.

A trial court's denial of a request for separate trials against each of several defendants was not an abuse of discretion in an action for damages for air pollution where it is alleged that several independently emitted contaminants mix in the ambient air.

CONCURRENCE BY ALLEN, P. J.

11. Action—Class Actions—Spurious Class Actions—Court Rules —Common Question—Federal Precedent.

*The Michigan court rule which governs class actions does not contain an express requirement that issues common to all members of the class predominate before a spurious class action may be maintained, although the Federal rule from which it was taken has since been amended to include such a requirement; the Court of Appeals is not bound by Federal precedent, but the option of interpreting the Michigan rule to include the predominance requirement should be available where it is not clearly foreclosed by the rule's language (GCR 1963, 208; FR Civ P 23).*

DISSENT BY D. E. HOLBROOK, J.

12. Appeal and Error—Class Actions—Common Question—Necessity for Considering Issue.

*The issue of whether common questions of law or fact must be predominant in order to maintain a spurious class action is not ripe for appellate resolution where the issue has not been fully considered or presented by the parties to the appeal and resolution of the issue is not necessary in reaching a decision.*

13. Courts—Court of Appeals—Federal Courts—Court Rules.

*Decisions of Federal courts regarding Federal rules of civil procedure may serve as guidance for discovery of the proper meaning of Michigan court rules, although the Court of Appeals is not bound by those decisions.*

14. Action—Class Actions—Court's Discretion.

*A trial court has the discretion to determine whether an action shall proceed as a class action.*

15. Action—Class Actions—Spurious Class Actions—Common Question—Common Relief—Court Rules.

*There are two prerequisites to maintenance of a spurious class action: (1) there must be a common question of law or fact, and (2) the plaintiffs must all be seeking the same relief; the second of these requirements is not met in a case where each of the plaintiffs is seeking money damages individually for various types of alleged injury to persons and property (GCR 1963, 208.1[3]).*

16. Action—Class Action—Air Pollution—Multiple Defendants—Common Question.

*A suit for damages for air pollution in which several plaintiffs allege damages from four sources, each emitting dissimilar pollutants, should not be allowed to proceed as a class action because there is a lack of common or controlling questions.*

17. Nuisance—Interference With Use of Property—Negligence.

*A plaintiff to prevail in an action for nuisance must show: interference with the plaintiff's use and enjoyment of his property sufficient to be definitely annoying and offensive to normal persons in the immediate locality, that the interference is continuous or frequently recurring and such as to cause harm to the plaintiff, and that the defendant's conduct was negligent or unreasonable and a proximate cause of the plaintiff's injuries.*

18. Nuisance—Liability—Damages—Private Nuisance—Public Nuisance.

*Liability and damages can be established only in cases of private rather than public nuisance.*

19. Nuisance—Surrounding Circumstances.

*The existence of a nuisance depends on all of the attending and surrounding circumstances, and each case necessarily depends on its own facts.*

20. NUISANCE—ACTION—CLASS ACTIONS—AIR POLLUTION—COMMON QUESTION—APPEAL AND ERROR.

A trial court erred in its finding that a question of whether the discharge of pollutants into the air by several defendants constituted a nuisance as to the several plaintiffs was a common question, thereby supporting the maintenance of a class action, where the large number of plaintiffs, their basis for suit, and the nature of the defendants' operations, geographic locations and nuisance liability compel a finding that no common question of law or fact exists.

21. ACTION—CLASS ACTION—AIR POLLUTION—COMMON QUESTION—REMAND.

A suit for relief from and damages for air pollution brought by a large number of plaintiffs which cannot be maintained as a class action because there is no common question of law or fact should be remanded to allow the plaintiffs to amend their pleadings to divide the suit into manageable actions which do contain common questions of law and fact.

Appeal from Wayne, George T. Martin, J. Submitted January 4, 1977, at Detroit. (Docket Nos. 27475, 27476.) Decided August 8, 1977. Leave to appeal applied for.

Complaint by Oakwood Homeowners Association, Inc., and several individual plaintiffs against Ford Motor Company, Marathon Oil Company, Edward Levy Company and International Salt Company for a declaration that defendants have violated the Michigan Environmental Protection Act, injunctive relief, damages for nuisance, and punitive damages. Defendants moved for accelerated and summary judgment and for dismissal, alleging the impropriety of the class action, misjoinder of plaintiffs and of defendants, and the need for separate trials of each named plaintiff's claim for damages against each defendant. The trial court denied the motions. Defendants appeal by leave granted. Affirmed.

*Donnelly W. Hadden*, for plaintiffs.

*Butzel, Long, Gust, Klein & VanZile* (by *Leslie W. Fleming*), for Ford Motor Company and Marathon Oil Company.

*Dahlberg, Mallender & Gawne* (by *Jack C. Radcliffe, Jr.*), for International Salt Company.

*Honigman, Miller, Schwartz & Cohn* (by *Robert A. Fineman*) (*Davidson, Gotshall, Kohl, Nelson, Secrest, Wardle & Lynch*, of counsel), for Edward Levy Company.

Before: ALLEN, P. J., and D. E. HOLBROOK and D. C. RILEY, JJ.

D. C. RILEY, J. On July 31, 1972, the Oakwood Homeowners Association along with 20 named, individual plaintiffs instituted this air pollution suit as a class action against four corporate defendants. The class consists of the association's members as well as other persons similarly situated, all of whom reside within a rectangularly shaped, eight-block area, slightly less than a square mile in size. The area is described as "both sides of Oakwood Avenue, bounded by Schaefer Highway, Dix Road, South Fort Street and the Rouge River".

The defendants, Ford Motor Company, Marathon Oil Company, Edward Levy Company and International Salt Company, each operate separate industrial facilities in southwest Detroit and western Wayne County within close proximity to plaintiffs' neighborhood. Defendant Ford manufactures automobiles and other products at its "River Rouge Complex" located in Dearborn; defendant Marathon maintains a petroleum refinery near the intersection of South Fort Street and Schaefer Highway in Detroit; defendant Levy operates a

lime processing plant known as the Detroit Lime Company, located on Mellon Street in Detroit near Dix Road and the Rouge River; and defendant International Salt engages in the extraction, processing, storage and transportation of salt from its "Detroit Mine" located near Oakwood Avenue and Dumfries Street. Besides the defendants, other industries and public utilities operate facilities near the described area.

In a three-count complaint plaintiffs seek declaratory and injunctive relief pursuant to the Michigan Environmental Protection Act, MCLA 691.1201 *et seq.;* MSA 14.528(201) *et seq.,* (Count I); individual damages against the four defendants, jointly and severally, for common law private nuisance created by air pollution (Count II); and joint punitive damages against the defendants in separate amounts totaling $2.18 million (Count III). Basically, plaintiffs' complaint alleges that defendants have concurrently emitted and continue to emit into the atmosphere noxious aerosols, gases and particulate matter of sufficient volume and regularity to befoul the air, damage plaintiffs' property and endanger the health of some class members.

In July, 1975, after receiving 47 sets of interrogatory answers covering 72 individual claimants, defendants renewed their prior, unsuccessful efforts to dismiss plaintiffs' complaint. Specifically, the defendants by way of motion argued: (1) the impropriety, under GCR 1963, 208, of class-action status with regard to Counts II and III; (2) the misjoinder of plaintiffs and defendants, GCR 1963, 207; and (3) the need for separate trials under which each plaintiff would be required individually to sue each defendant apart from the others.

In an opinion of August 18, 1975, exhaustively

reviewing applicable law, the lower court affirmed its denial of defendants' earlier motions, denied defendants' motion for separate trials and expressly held:

"This court is of the opinion that the allegations in the instant complaint and the very nature of this action make out a class action under the Michigan court rule 208.1. The use of a class action as a procedural device in this case will achieve economies of time, effort and expense and promote uniformity of decision as to persons similarly situated.

"Common questions of law, which comprise the main thrust of this litigation, are found to exist and to predominate over individual issues. The question of liability of all of the defendants, as alleged in * * * the complaint, is a common question of law. Did the four defendants violate the laws of Michigan and thereby cause damages to plaintiffs by the discharge into the air of certain gases and particulate matters?

"The determination of this liability is a common question of law as to all parties concerned. This common liability issue is not such a situation which would require a class member to litigate 'numerous and substantial questions to determine his individual right to recover subsequent to the rendering of any class judgment.' A trial on the merits can determine liability on the part of all or none or some of the defendants. Once the liability issue is determined, the mechanics of proving individual damages, if such is necessary, can follow established procedures of claim verification. See Comment, *Manageability of Notice and Damage Calculation in Consumer Class Actions,* 70 Mich LR 338 (1971)."

On October 20, 1975, the lower court denied rehearing of defendants' motions, reiterating its previous holding. In response, defendants sought and secured leave to appeal the rulings of the trial judge before this Court.

We preface our analysis of defendants' appellate

claims with a brief review of additional facts culled from plaintiffs' answers to defendants' interrogatories. These documents disclose that by far the great majority of plaintiffs allege damage to their homes or adjacent structures and to vegetation on their property. While some plaintiffs are specific in describing the offending effluent, many others point to multiple emmissions and still others are silent on the precise cause of the alleged pitting, corrosion and dust. In addition, some plaintiffs charge defendants with damaging their health; and others do not. A few assert noise and vibration damage; but most do not. Moreover, as would be expected, some class members are long-time residents of the neighborhood, while others are more recent arrivals. In essence, then, plaintiffs are a heterogeneous lot, whose common tie is geographical (in that they together endure the alleged discharges from defendants' concurrent operations), and whose damages are different in degree, and to a limited extent, in kind.

On appeal, defendants contend that the present suit may not be maintained in its present posture either under the class action rule, GCR 1963, 208, or under the permissive joinder rule, GCR 1963, 206. They argue that, given the diversity of plaintiffs and defendants, the varying nature of the claims and damages, and the complexity of the case, no single jury could fairly weigh the liability, if any, of each defendant and accurately assess the damages, if any, flowing to the numerous claimants, without inevitably prejudicing defendants' due process rights. Accordingly, defendants seek severance of Count I, the claim for injunction; separate trials as to each defendant on Count I; and, alternatively, dismissal of plaintiffs' claims for damages on grounds of unmanageability, or,

severance and separate trials of each named plaintiff's claim for damages against each defendant.

Plaintiffs initiated this suit under the so-called "spurious" class action rule of GCR 208.1(3), which provides in germane part:

".1 Representation. If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, 1 or more, as will fairly insure the adequate representation of all may on behalf of all sue or be sued when the character of the right sought to be enforced for or against the class is

\* \* \*

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

With regard to the numerosity of plaintiffs, the adequacy of representation and the sufficiency of notice to potential claimants, defendants apparently do not challenge plaintiffs' status as a class; rather, defendants maintain that the questions of law and fact common to all plaintiffs are eclipsed by legal and factual issues peculiar to individual plaintiffs. In other words, the common questions do not predominate, as required by the following language from *Northview Construction Co v St Clair Shores,* 395 Mich 497, 509; 236 NW2d 396 (1975):

"Under GCR 1963, 208.1(3), a claim is typical when it is based on a 'common question of law or fact \* \* \* and a common relief is sought'. The claims need not be identical in such matters as the individual amount of damages, *Foster v Detroit,* 254 F Supp 655, 667–669 (ED Mich, 1966), *aff'd* 405 F2d 138 (CA 6, 1968); *Oppenheimer v F J Young & Co,* 144 F2d 387, 390 (CA 2, 1944), so long as common issues predominate and a judicial economy will be realized through the class

action procedure. *Partain v First National Bank of Montgomery,* 59 FRD 56 (MD Ala, 1973)."

Not only defendants, but the lower court and plaintiffs' counsel as well, have viewed the predominance of common legal and factual questions as the prime area of focus. In this regard, we disagree.

We believe that class action practice under Michigan law contains no requirement that common class questions predominate over issues unique to individual plaintiffs. Admittedly, *Northview, supra,* carries language pointing to the opposite conclusion, but that case does not control for two reasons.

First, the opinion of the Court in *Northview* has lost its mooring in precedent. See *Northview Construction Co v St Clair Shores (On Rehearing),* 399 Mich 184; 249 NW2d 290 (1976), where an equally divided Supreme Court affirmed this Court's rendition of the *Northview* litigation. 44 Mich App 614; 205 NW2d 895 (1973). Second, the Supreme Court's earlier version of *Northview,* quoted above, cited *Partain v First National Bank of Montgomery,* 59 FRD 56 (MD Ala, 1973), as enunciating the requirement of predominance. *Partain,* however, interpreted FR Civ P 23(b)(3), as amended in 1966, which expressly requires the predominance of common over uncommon class issues. In contrast, GCR 208.1(3), as cloned from former FR Civ P 23(a)(3), requires (in addition to a request for common class relief) the presence of "a common question of law or fact affecting the several rights". (Emphasis added.)

As this Court has indicated:

" 'The "spurious" class action under [former] Rule 23(a)(3) involves the enforcement of rights which are

several where there is a common question of law or fact and a common relief is sought. *The spurious class suit is merely a permissive joinder device in which the right and the liability of each individual plaintiff are distinct. The class is formed solely by the presence of a common question of law or fact, and there is no jural relationship among the members of the class.* It is an anomaly because it does not involve a recognizable class. The real justification for the spurious type of action is its convenience in litigating numerous individual claims in one action. It is really an invitation to all persons similarly situated to join the action and litigate their several claims, but except to the extent that common claims are litigated, it has no binding effect on the members of the class who are not parties to the action. Procedure in this respect is largely a matter of discretion of the trial court.' " *Northview, supra,* 44 Mich App at 618–619, quoting 59 Am Jur 2d, Parties, § 51, pp 415–417. (Emphasis added.)

See also, 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 605.

To be sure, recent Michigan cases have reiterated the Federal requirement that common questions must predominate. See *Kass v H B Shaine & Co, Inc,* 71 Mich App 101, 105; 246 NW2d 396 (1976), and *Grigg v Michigan National Bank,* 72 Mich App 358; 249 NW2d 701 (1976). *Kass* and *Grigg,* while acknowledging the differences between the present Federal and Michigan class-action rules, nonetheless looked to Federal decisions for guidance. In addition, both *Kass* and *Grigg* relied upon the since displaced *Northview* opinion as reported in 395 Mich 497; 236 NW2d 396 (1975).

We question, however, the wisdom of looking to post-1966 Federal precedent in order to import into GCR 208 "by implication, common sense and reason", *Grigg, supra* at 365, the numerous, diverse requirements of the current Federal class-action rule. Doubtless former Federal Rule 23(a)(3),

and necessarily, the identical GCR 208.1(3), have been the subject of severe criticism. See *Advisory Committee's Note, Proposed Rules of Civil Procedure,* 39 FRD 69, 98–99 (1966), Kalven & Rosenfield, *The Contemporary Function of the Class Suit,* 8 U Chi L Rev 684 (1941), Simeone, *Procedural Problems of Class Suits,* 60 Mich L Rev 905 (1962). It does not follow, however, that Michigan law must absorb *in toto* the present Federal rule with its blemishes as well as its strengths. Described as a rule containing "a hodgepodge of pragmatic and occasionally conflicting objectives", *Developments in the Law—Class Actions,* 89 Harv L R 1318, 1323 (1976), amended FR Civ P 23 now faces challenge from other class-action statutes which can serve as authoritative models for the states. See the Uniform Class Actions Act recently drafted by the National Conference of Commissioners on Uniform State Laws, 12 Uniform Laws Annotated, 1977 Cum Supp, pp 10–21. See also, NY Civ Prac Law & Rules §§ 901–909 (McKinney Supp 1976). A collation of the current Federal rule, the uniform act and the recently promulgated New York law reveals clearly that the precise nature of class-action practice in any particular jurisdiction depends, at bottom, upon decisions of policy. Since this Court is endowed with neither rulemaking nor legislative authority, we decline to enact "by implication" amended Federal Rule 23.

Assuming, *arguendo,* that a requirement of predominance nonetheless inheres in GCR 208.1(3), we hold that plaintiffs have satisfied this prerequisite. As one treatise notes:

"[C]ourts have held that an action can be brought under [amended Fed R Civ P 23] (b)(3) even though there is not a complete identity of facts relating to all class members, as long as a 'common nucleus of opera-

tive facts' is present". 7A Wright & Miller, Federal Practice and Procedure, § 1778, p 53, citing *Esplin v Hirschi,* 402 F2d 94, 99 (CA 10, 1968), *Illinois v Harper & Row Publishers, Inc,* 301 F Supp 484, 488 n 7 (D Ill, 1969), *Geo H McFadden & Bro, Inc v Home-Stake Production Co,* 295 F Supp 590 (D Okla, 1968).

In the present case, the court below correctly recognized that the question whether "the four defendants violate[d] the laws of Michigan * * * by the discharge into the air of certain gases and particulate matter" is an issue common to all class members.[1] Moreover, from a review of the record, an additional factual issue emerges: whether defendants' concurrent operations create "stenches [which] contaminate the atmosphere to such an extent as to substantially impair the comfort or enjoyment of adjacent premises". *de Longpre v Carroll,* 331 Mich 474, 476; 50 NW2d 132 (1951). Similarly, see *Waier v Peerless Oil Co,* 265 Mich 398, 401; 251 NW2d 552 (1933). These are questions ably suited for class resolution which would assuredly require needless duplication of proofs if each plaintiff were required to prosecute his claim apart from the rest.

Having concluded that common class questions exist (and indeed predominate), we next consider whether "a common relief is sought". GCR 208.1(3). Defendants argue that since each claimant is concerned solely with his own recovery of damages, common class relief is not being requested. We disagree.

"What seems to have bothered some courts is the requirement of 'common relief.' If each member of the class has an individual right to damages, these courts

---

[1] Although the trial court dubbed this issue as one of law, we hold it to be one of fact.

have thought that 'common relief' is not being sought. But the accepted interpretation is that 'common relief' in [former] Rule 23(a)(3) covers cases where the same type of relief, such as damages or an injunction, is being sought for or against all members of the class, as distinguished from cases where an injunction is being sought with regard to some members of the class and damages as to others. Thus the fact members of the class may have claims for varying amounts of damages does not prevent the use of the 'spurious' class suit." 2 Barron & Holtzoff, Federal Practice and Procedure (Wright ed, 1961), § 562.3, pp 283–284.

We hold therefore that at least with regard to plaintiffs' claim of private nuisance based on air pollution—as distinguished from allegations of excessive noise and vibrations—the plaintiffs are seeking common relief. Consequently, they may proceed as a class to that extent.

Defendants contend that maintenance of suit either by class action or by permissive joinder will create imponderable problems of jury confusion, deprive defendants of their due process rights and cause the trial to take on the hurly-burly atmosphere of a carnival sideshow. Citing *Boring v Medusa Portland Cement Co,* 63 FRD 78 (MD Pa, 1974), *appeal dismissed* 505 F2d 729 (CA 3, 1974), *Diamond v General Motors Corp,* 20 Cal App 3d 374; 97 Cal Rptr 639 (1971), *City of San Jose v Superior Court of Santa Clara County,* 12 Cal 3d 447; 115 Cal Rptr 797; 525 P2d 701 (1974), *Bajorek v Kurtz,* 335 Mich 58; 55 NW2d 727 (1952), and kindred cases, defendants urge us to cease what they view as a monumental disregard of their due process rights.

Having carefully sifted defendants' citations of authority, we find them inapposite. In *Boring, supra,* 221 named plaintiffs commenced a class action on behalf of themselves, all "past residents,

transitory persons and even visitors," 63 FRD at 83, of plaintiffs' neighborhood against two corporate defendants whose independent operations released limestone dust into the air. Relying upon the express command of amended FR Civ P 23(b)(3) that a class action be the superior method of adjudication, the court in *Boring* denied class-action certification because other techniques of litigation would be superior to the class vehicle. The court specifically remarked that notice to absent, potential claimants and the compilation of requests to opt out of the suit, as required by the Federal rule, would prove too burdensome for the fair and efficient administration of justice.

In contrast to *Boring,* the present suit differs significantly. The instant class is smaller (comprising approximately 46 households according to plaintiffs' counsel, or possibly 72 claimants according to the interrogatory responses). The class does not include past residents, visitors or transients but only owners and occupiers of land in a relatively compact area. More importantly, notice should prove no problem since absent class members are neither bound by the litigation nor obliged to opt out of the suit. *Kass v H B Shaine & Co, supra* at 111, *Northview, supra,* 44 Mich App at 618–619. In any event, given the small size of plaintiffs' neighborhood, actual notice can easily be achieved. Finally, unlike FR Civ P 23(b)(3), GCR 208.1(3) imposes no requirement that the class suit be superior to other modes of adjudication. Rather, as noted, GCR 208.1(3) functions as a permissive joinder device. *Northview, supra,* 44 Mich App at 618; 1 Honigman & Hawkins, *supra* at 605.

For similar reasons, defendants' other foreign citations can be dismissed summarily, either because the classes of plaintiffs and defendants were

so huge as to be unwieldy, see *Diamond, supra* (class suit, representing all property owners and residents of Los Angeles, numbering 7,119,184 persons, against more than 293 industrial corporations and municipalities for air pollution, dismissed as unmanageable), or, because the foreign jurisdiction imposes requirements closely resembling the amended Federal rule, see *San Jose, supra* (class certification denied plaintiffs representing property owners located near airport runway where absent claimants would be bound by the suit and where common class questions were not "sufficiently numerous and substantial [i.e., predominant] to make the class action advantageous", 12 Cal 3d at 460; 525 P2d at 710).

Defendants' reliance on *Bajorek, supra,* is also unavailing. There a group of property owners, permissively joined by the trial court, sought individual damages against a cement manufacturer whose trucks allegedly caused damage to plaintiffs' separate parcels from noise, vibration and dust. Interpreting a since repealed statute, MCLA 608.1; MSA 27.591, which permitted joinder where "sufficient grounds" are shown "to promote the convenient administration of justice", our Supreme Court held the joinder improper.

"We have a situation presented in which a number of persons assert that they have been injured severally in their property rights because of improper and unlawful acts on the part of defendants. It cannot be said with certainty that the same issues will be presented in all of the 25 cases alleged in the declaration and covered by the bill of particulars. Proofs may show damage in some cases but not in others, and defenses may exist against the rights of certain plaintiffs that are not available against other plaintiffs.

"We do not think that it was the intention of the legislature in the enactment of the provisions of the

statute relating to joinder of causes of action to permit such method of procedure in a situation of the character here involved." 335 Mich at 64.

Although *Bajorek* would appear to scuttle plaintiffs' suit, we do not believe that decision properly controls the case at bar. In *Hardware Dealers Mutual Insurance Co v R H Hidey, Inc,* 349 Mich 490, 505–506; 84 NW2d 795 (1957), the Supreme Court acknowledged criticism of *Bajorek* and expressed a willingness to reconsider that holding, but found no need to do so in a suit grounded in contract:

"*[Bajorek]* has been the subject of criticism as representing a refusal to continue a trend toward progressive liberalization of civil procedure in Anglo-American law. 51 Mich L Rev 1068.

"While we feel that a *complete or substantial disparity* of issues of either law or fact and a complete or substantial disparity of defenses available against proposed joint plaintiffs would indeed affect the decision as to whether or not joinder promoted the convenient administration of justice, we do not feel compelled to review these questions and their effect upon proposed joint plaintiffs in *tort* actions at this time." (Emphasis added.)

In the present tort suit, this Court finds a substantial *parity* of issues regarding air pollution: (1) whether defendants' distinct operations have violated and continue to violate local, state and Federal air pollution standards, and (2) whether the various defendants have released and continue to release contaminants which "substantially impair [or have impaired] the comfort or enjoyment of adjacent premises". *de Longpre, supra,* p 476. While other issues, of course, exist which distinguish the claimants, these can be considered sepa-

rately after resolution of the foregoing common questions of liability. Specifically, since GCR 208.1(3) serves merely as a permissive joinder device, *Northview, supra,* 44 Mich App at 618, 1 Honigman & Hawkins, *supra* at 605, later severance of parties or claims can be effected "by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just". GCR 1963, 207.

If "convenient administration of justice" be the touchstone, then we believe, as did the trial court, that judicial economy and convenience to the litigants are better served by permitting the instant suit to proceed as a class action.[2] The rule of *Bajorek* may have functioned well in those halcyon days before the advent of bulging dockets. If it were applied today, however, *Bajorek* would work "the possible debilitation and blunting of the instrument *[i.e.,* the class action] so useful to * * * everyday, average citizens lost and bewildered in the jungle of giants". *Paley v Coca Cola Co,* 389 Mich 583, 595; 209 NW2d 232 (1973) (WILLIAMS, J.).

In our view, the difficulties of separate suits against each of four defendants are obvious. As one possible scenario, we reproduce in the margin plaintiffs' version of the troubles awaiting them if they are consigned to separate trials for relief.[3] In

[2] Given our belief that maintenance of the instant suit as a class furthers the "convenient administration of justice", it follows that the permissive joinder of plaintiffs, if that had been effected, would also have been proper. *See* GCR 1963, 206.1(2), which expressly permits joinder where "it appears that [plaintiffs'] presence in the action will promote the convenient administration of justice".

[3] Based on the pre-trial statement filed with the lower court, plaintiffs estimate the duration of separate trials as follows:

"[T]here are 20 named plaintiffs divided into 12 households, plus 34 more households consisting of unnamed class members who have claims. Presumably if separate trials were granted, this would require 46 trials, one for each household. There are 51 witnesses listed, all of

short, we decline to follow *Bajorek,* viewing it as a curious anachronism reflecting outdated notions of civil procedure and failing to reflect our state's growing environmental ethos. See generally Const 1963, art 4, § 52, the Environmental Protection Act, *supra, Ray v Mason County Drain Commissioner,* 393 Mich 294; 224 NW2d 883 (1975), and *Eyde v Michigan,* 393 Mich 453, 455; 225 NW2d 1 (1975). In light of the comments in *Hardware Dealers, supra,* we are convinced the Supreme Court would agree.

Although the suit may continue in class format on the foregoing issues of liability, the question remains whether the jury can reasonably and fairly apportion the liability, if any, of the four defendants. A recent Federal case, *Michie v Great Lakes Steel,* 495 F2d 213 (CA 6, 1974), *cert den* 419 US 997; 95 S Ct 310; 42 L Ed 2d 270 (1974),

---

whom may not be called. 51 witnesses plus 72 individual plaintiffs equal 123 testifiers in one trial. Some may require many hours to testify, others only a very few minutes. Let us assume that they average 1 hour each. Allowing 20 court hours per week plus 2 days for openings and closing means about 6-1/2 weeks would be required to present plaintiffs' case as a class action. Defense proofs would be in addition. It would be a long trial, but not longer than several which are tried nowdays.

"Of the 51 witnesses listed by plaintiffs, about 38 of them are common witnesses. (Air pollution inspectors, lab technicians, experts on air pollution effects, etc.). If separate trials were ordered, these 38 witnesses would have to come back and re-testify in each of the 46 trials. (Also, some plaintiffs would be called as witnesses in the trials of other plaintiffs.) By the same estimate as above, 1 hour per witness, there would be 46 trials with 42 or more witnesses each, or a total of 1,932 witness hours required. In addition there would be 46 opening statements for each party, 46 jury selections, 46 sets of summations and 46 jury charges. By this route 2 years and 30 weeks of solid trial time would be needed for plaintiffs' proofs. With defendants' cases added, it could take 3-1/2 years to try this matter." (Appellee's brief at 8.)

*N. B.,* plaintiffs' calculations assume that the various defendants would be tried jointly in each plaintiff's separate suit. If, however, as defendants request, each plaintiff were required to prosecute his claim against the defendants in four distinct lawsuits, then plaintiffs' calculations (assuming they are reasonable) would have to be quadrupled.

provides the answer. In *Michie,* 37 Canadian residents, permissively joined, sued three firms operating seven American plants across the Detroit River. Founding their claims on common law nuisance, plaintiffs alleged that pollutants from defendants' separate facilities would converge in the ambient air and continually waft over the river, thereby damaging plaintiffs' persons and property. The Sixth Circuit, in an opinion written by Judge GEORGE EDWARDS, formerly a justice of our Supreme Court, addressed an issue substantially similar to the underlying question at bar:

"Under the law of the State of Michigan, may multiple defendants, whose independent actions of allegedly discharging pollutants into the ambient air thereby allegedly create a nuisance, be jointly and severally liable to multiple plaintiffs for numerous individual injuries which plaintiffs claim to have sustained as a result of said actions, where said pollutants mix in the air so that their separate effects in creating the individual injuries are impossible to analyze[?]" 495 F2d at 215.

It should be noted that the instant plaintiffs, before both the trial court and this panel, similarly contend that certain emmissions from the defendants' separate operations combine synergistically[4]

---

[4] The problem of synergistic chemical reaction and the ensuing difficulty of proving the harm caused by isolated contaminants has recently been addressed:

"Assume that a suit is brought alleging water quality degradation as a result of several polluters discharging wastes into a river. Some potential defendants discharge hot water; others, chemical wastes. Assume further that a synergistic interaction between chemical and thermal pollutants intensifies the effect of both effluents. If an action were brought against the class of chemical polluters alone, the defendant class could assert that liability, if any, rested with the thermal polluters. A similar defense, of course, would be available to a class of thermal polluters. If plaintiffs must sue these groups separately, the party bearing the risk of nonpersuasion will probably lose both suits. The only way to fairly allocate liability is to combine

in the circulating air, thus making it well nigh impossible to differentiate particular, offensive substances with precision.

In *Michie,* after identifying two conflicting strains in Michigan law regarding the indivisibility of injuries caused by multiple, independent tortfeasors,[5] the court concluded that the better rule requires the factfinder to resolve

"whether [the] liability of alleged polluters is joint or several * * * . Where the injury itself is indivisible, the judge or jury must determine whether or not it is *practicable* to apportion the harm among the tortfeasors. If not, the entire liability may be imposed upon one (or several) tortfeasors subject, of course, to subsequent rights of contribution among the joint offenders.

* * *

"Assuming plaintiffs in this case prove injury and liability as to several tortfeasors, the net effect of Michigan's new rule is to *shift the burden of proof* as to which one was responsible and to what degree *from the injured party to the wrongdoers."* 495 F2d at 217, 218. (Emphasis added.)

We believe *Michie* correctly enunciates Michigan law. If plaintiffs prevail on the previously posed class issues, the burden of apportioning liability then shifts to defendants who clearly are more familiar than plaintiffs with the nature of the effluents issuing from their respective facilities. Hence, logic dictates that, if general liability

the two subclasses for adjudication of common legal and factual questions, even though certain questions of fact would vary between the subgroups." Parsons & Starr, *Environmental Litigation and Defendant Class Actions: The Unrealized Viability of Rule 23,* 4 Ecology L Q 881, 909–910 (1975). (Footnotes omitted.)

[5] *See, Meier v Holt,* 347 Mich 430; 80 NW2d 207 (1956), *DeWitt v Gerard,* 281 Mich 676; 275 NW 729 (1937), *DeWitt v Gerard,* 274 Mich 299; 264 NW 379 (1936), *Frye v Detroit,* 256 Mich 466; 239 NW 886 (1932). *Compare Watts v Smith,* 375 Mich 120; 134 NW2d 194 (1965), *Maddux v Donaldson,* 362 Mich 425; 108 NW2d 33 (1961).

can be shown, each defendant shall then be required to establish the degree of property damage, if any, attributable to emissions emanating from its particular operations.

Notwithstanding defendants' expressed fears, pandemonium need not reign at trial. We are confident that with patience and the use of photographs, charts and other demonstrative evidence, an attentive jury will be able to glean the necessary facts. Although the posing of jury instructions may prove challenging, the problem is not intractable.[6]

"Manageability of the classes * * * may certainly tax the imagination and ingenuity of the litigants, counsel and the court. But until management is recognized as impossible or near impossible, the Court will depend upon the ingenuity and aid of counsel to solve the complex problems this litigation may bring. If successful, the economies of time, effort and expense will more than compensate the effort." *In re Motor Vehicle Air Pollution Control Equipment,* 52 FRD 398, 404 (CD Cal, 1970).

Similarly, see *Appleton Electric Co v Advance-United Expressways,* 494 F2d 126, 139 (CA 7, 1974) (class suit permitted under amended FR Civ P 23 despite defendants' claims of unmanageability where a class of several million shippers sued a class of 1400 motor carriers).

Assuming the class questions, as heretofore identified, are resolved against the defendants, then other issues will likely come to fore:

(1) the proper mode of (a) verifying each plaintiff's property damages and (b) permitting plain-

---

[6] *See, e.g.,* Wayne Circuit Judge Victor Baum's charge to the jury in *Heine, et al v The Budd Co,* Wayne Circuit Court No. 56172, a similarly complex pollution suit, reproduced in Practicing Law Institute, Legal Control of the Environment—3d, p 121 *et seq.*

tiffs who allege health impairment or noise and vibration damages to pursue those claims;

(2) the availability of defenses, if any, against individual claimants;[7] and

(3) the propriety of class-wide versus individual punitive damages against the defendants jointly.

Because of the complexities inherent in litigation of this size, we decline to require any particular procedure with which to dispose of these other questions as they may arise. We believe the trial court with the aid of counsel for both parties can devise expeditious yet equitable means of resolving the additional issues. Whether in exercising its discretion the court below utilizes subclasses, requires separate trials or adopts more imaginative methods of resolving the remaining issues, see, *e.g.,* Lamm, *Environmental Class Actions Seeking Damages,* 16 Rocky Mt L Inst 59, 99–101 (1971), *Developments in the Law—Class Actions,* 89 Harv L Rev 1318, 1516–1523 (1976), we believe that the trial court, viewing the proceedings as they de-

---

[7] While *Bajorek, supra,* as tempered by *Hardware Dealers, supra,* cautions against resolving *en masse* the claims of numerous plaintiffs where there exists "a complete or substantial disparity of defenses available", 349 Mich at 506, no such disparity appears in the instant case. In their brief, defendants do not avail themselves of any defenses which pertain to the class as a whole. Rather, they assert that "[d]efenses likely exist against the rights of certain plaintiffs that are not available against other plaintiffs, *i.e.,* statute of limitations". (Appellants' brief at 21.) Thus, the more appropriate procedure, as outlined in the text, is to postpone resolution of any defenses available against individual claimants until after the disposition of the common class questions.

With regard to the availability of the statute of limitations, however, we note our approval of the lower court's comments:

"The defendant claims that the statute of limitations prevents any claims which accrued more than three years prior to filing of the complaint. This argument is not persuasive in that the general rule provides that where a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from the date of the last injury. 54 CJS, Limitations of Actions § 169. Therefore, in the normal pollution case, since the tort is committed every day, the cause of action will accrue up to the time of trial."

velop, is in a far superior position than this Court
to determine the most salutary course. However,
we commend to the court's attention the estab-
lished policy against splitting a cause of action as
embodied in GCR 1963, 203.1 and 301.2, and also
our belief that calculations of damages are more
accurately determined if damages fairly attributa-
ble to noise and vibration are assessed alongside
those damages caused by air pollution.

With regard to defendants' request that separate
trials against each defendant be ordered under
Count I, the suit for injunction, we find no abuse
of discretion in the trial court's refusal to sever.
Where several independently emitted contami-
nants allegedly mix synergistically in the ambient
air, a trial court stands on safe ground in denying
a request for separate trials. Otherwise, each de-
fendant could point an inculpatory finger at the
others and thereby absolve itself of the duty to
abate a nuisance.

In closing, we commend the lower court for its
willingness to grapple with the countless chal-
lenges generated by a suit of this kind. A jurist
wedded to the tired procedures of the past might
not have been as willing as the judge below to
open the courthouse doors and resolve the taxing
issues raised by the instant litigation. But then
again, a judge of lesser stock is not the type of
public servant that our increasingly litigious citi-
zens demand and deserve.

Affirmed. Costs to plaintiffs.

ALLEN, P. J. *(concurring)*. I concur in the opinion
of Judge RILEY. I write separately only to harmo-
nize my vote here with my concurrence in *Grigg v
Michigan National Bank,* 72 Mich App 358; 249

NW2d 701 (1976), which is criticized in the major-
ity opinion.

Our GCR 1963, 208 was copied from an earlier
version of Federal Rules of Civil Procedure (FR
Civ P) 23. The Federal rule was amended in 1966
to add, *inter alia,* an express requirement that
issues common to all members of the class "pre-
dominate" before a spurious class action may be
maintained. Michigan did not follow the Federal
lead; consequently, our Rule 208 remains substan-
tially identical to the pre-amendment version of
FR Civ P 23 from which it was copied.

The *Grigg* opinion effectively read a predomi-
nance requirement into Rule 208. That issue itself
was insignificant in *Grigg,* but the technique used
was important. Basically, we looked to the Federal
experience—both case law and amendments—for
guidance in interpreting Rule 208. We ended by
concluding that several requirements, including
predominance:

"* * * are stated in the Federal class action rule,
and we believe by implication, common sense and rea-
son in the Michigan rule." 72 Mich App at 365.


Judge Riley's opinion in this case, while ex-
pressing disapproval of the predominance require-
ment, nevertheless assumes its presence and holds
that it is satisfied. I agree.

The principal cause of this concurring opinion is
to defend the technique of interpreting our Rule
208 by learning from the Federal experience.
While I do not think that we are legally bound to
copy Federal decisions and amendments, I do
think that the option should be available where it
is not clearly foreclosed by the language of our
own rule.

*Grigg* cited *Northview Construction Co v St Clair Shores,* 395 Mich 497; 236 NW2d 396 (1975), as authority for both the technique of adopting Federal amendments via case decisions and for the narrower rule that common issues must predominate in a spurious class action. *Northview* announced a predominance requirement for Rule 208 and cited as authority *Partain v First National Bank of Montgomery,* 59 FRD 56 (MD Ala, 1973). Significantly, *Partain* is a Federal case which interprets the present FR Civ P 23, *i.e.,* the amended version which contains an express predominance requirement.

Judge RILEY's opinion correctly points out that *Northview* was initially decided by a 3–1 vote and, on more recent rehearing, the Court reached a 3–3 deadlock. *Northview Construction Co v St Clair Shores (On Rehearing),* 399 Mich 184; 249 NW2d 290 (1976). But I disagree with her conclusion that the changed vote destroys the precedential value of *Northview.* Requiring predominance of common issues makes maintenance of a class action more difficult. The original majority in *Northview* wanted to allow the class action to continue. It is unlikely that the two additional justices who voted on rehearing to bar the class action would favor easing the requirements for such actions.

With the reservations already stated, I concur in Judge RILEY's opinion because I do not believe that it is necessary to reject *Grigg* in order to allow this class action to proceed.

D. E. HOLBROOK, J. *(dissenting).* This writer must respectfully disagree with the majority's thorough and well-written opinions. The vast number of problems herein, some of which are even unforeseeable, should preclude maintenance of this ac-

tion as it presently stands as a class action pursuant to GCR 1963, 208.1. The complex law and fact issues herein require clarification, amendment of the pleadings, and division of this action before resort to the spurious class action device may be proper. Review of the facts herein is essential.

This action was filed on July 31, 1972, by 20 named individual plaintiffs and the Oakwood Homeowners Association, a Michigan nonprofit corporation, purportedly on behalf of a class consisting of all members of the association and other persons similarly situated. The individual plaintiffs live in a rectangular-shaped area described as "both sides of Oakwood Avenue, bounded by Schaefer Highway, Dix Road, South Fort Street and the Rouge River", an area slightly less than a square mile. This action is against four separate and distinct corporate entities, each individually conducting substantially different industrial operations in Wayne County.

The defendants, Ford Motor Company, Marathon Oil Company, Edward Levy Company and International Salt Company, each independently, operate separate and distinct types of industrial facilities in the area of southeastern Detroit and western Wayne County in close proximity to the plaintiffs' neighborhood. Defendant International Salt operates a salt mine facility and related processing storage and transportation operations. Defendant Marathon Oil Company operates a petroleum refinery. Defendant Ford Motor Company operates diverse manufacturing and industrial facilities at its River Rouge complex in the City of Dearborn. Defendant Levy operates the Detroit Lime Company, a lime processing plant and related facilities. The defendants' facilities are at diverse and separate locations. The distance be-

tween defendant Ford's complex north of the de-
scribed neighborhood to defendant Marathon's fa-
cility at the far south end of the area is approxi-
mately two miles. Furthermore, the length of time
that each defendant has operated its facility varies
from a few years to more than half a century. In
addition to these defendants, numerous other in-
dustries and public utilities operate facilities
within or in close proximity to the described area.

At the same time, numerous differences exist
with regard to the nature of the plaintiffs and
their claims herein. Claimants and their resi-
dences are located throughout the square mile
area. Each named plaintiff has lived in the area
for varying lengths of time, as little as two years
and up to as many as 45 or 50 years. While some
named plaintiffs blame no particular defendant or
substance, other plaintiffs are very specific in nam-
ing a defendant or substance as the source of the
nuisance. Usually this alleged nuisance and the
claimed resulting injuries are attributed to the
specific defendant where the facility is closest to
the plaintiff's residence.

Most plaintiffs do not allege personal injury
claims. However, several do claim damages for
personal injuries caused by air pollution. Many of
those claiming personal injury do not allege any
facts as to the source or kind of pollutant causing
their injury. However, the nature of the alleged
health problems relates largely to the respiratory
tract.

Numerous separate and distinct property claims
are made by the individually named plaintiffs. The
nature of the damages claimed must be noted. One
plaintiff contends that a tool shed was damaged by
air pollution. Another maintains that vibrations
caused chimney cracks. Another says his outdoor

furniture was damaged, while another maintains that his indoor furniture was damaged. One plaintiff claims damages to his fence, another maintains his roof was discolored, while several contend their automobiles' finishes were damaged. Other plaintiffs claim damages to their garden plants, blame sagging doors and wall cracks on vibrations which were allegedly caused by one or more of the defendants, and several plaintiffs claimed pollution damaged their swimming pools.

GCR 1963, 208.1[1] describes three types of class actions: (1) true class actions, GCR 208.1(1); (2) hybrid class actions, GCR 208.1(2); and (3) spurious class actions, GCR 208.1(3). Regardless of nomenclature, if a case falls within one of the three situations described above, it is an appropriate subject for a class action provided certain prerequisites common to all class actions are satisfied.[2] The basic issue we are concerned within the instant case is whether "a common question of law or fact affecting the several rights" is present so as to allow the plaintiffs to proceed by way of a

---

[1] "Effective July 1, 1966, Federal Rule 23 governing class actions was completely revised. The former classification of 'true', 'hybrid', and 'spurious' classes is abandoned. The amended rule uses a functional scheme of classification, in terms of the necessity to avoid the adverse effects of separate adjudication, or the advantages of permitting common adjudication. A preliminary determination must be made as to the adequacy of representation and the necessity of notice to absent members of the class. In certain circumstances, when the necessity for class action is least compelling, notified absentees may have the option to participate with the class, be individually represented, or withdraw and not be bound. The guiding purpose of the revision is apparently to make the results of all class actions binding on all members of the class, whenever a sufficient necessity for common adjudication is combined with adequacy of representation and sufficient notice to safeguard individual interests. See Barron & Holtzoff, Wright Ed., § 562, 1966 Pocket Part." 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), 1976 Pocket Part, p 226.

[2] 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), pp 601–602.

spurious class action. GCR 1963, 208.1(3). Herein the plaintiffs allege that the defendants' liability is a common question which would permit bringing of this lawsuit as a class action.

This suit was initiated as a "spurious" class action pursuant to GCR 1963, 208.1(3).[3] This writer at this time cannot agree with the majority's conclusion that this does not require that common class questions of law or fact must be predominant. At this time this issue is not ripe for appellate resolution. See *Northview Construction Co v City of St Clair Shores,* 395 Mich 497; 236 NW2d 396 (1975), *Northview Construction Co v St Clair Shores (On rehearing),* 399 Mich 184; 249 NW2d 290 (1976) (equally divided Court affirmed the opinion of the Court of Appeals, 44 Mich App 614; 205 NW2d 895 [1973], which the Court had originally reversed). This issue has not been fully considered or presented by the parties to this appeal, nor is resolution of this issue necessary for our decision.

As Judge RILEY properly points out, Michigan law does not absorb *in toto* the present Federal rule (FR Civ P 23),[4] Judge RILEY's opinion at

---

[3] GCR 1963, 208.1(3) provides in full as follows:

"Representation. If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, 1 or more, as will fairly insure the adequate representation of all may on behalf of all sue or be sued when the character of the right sought to be enforced for or against the class is * * *

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

[4] FR Civ P 23 provides:

"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

209. See *Kass v H B Shaine & Co, Inc,* 71 Mich App 101, 105; 246 NW2d 396 (1976), *Grigg v Michigan National Bank,* 72 Mich App 358; 249 NW2d 701 (1976). However, this writer disagrees with the majority and feels that there is value in looking to Federal decisions to aid in interpretation of our own rules. Again, it is emphasized that we are not bound by Federal decisions regarding FR Civ P 23. Nevertheless, those decisions can serve as guidance to discovery of the proper meaning of our own rules.

In Michigan, the trial court has discretion in determining whether an action shall proceed as a class action. *Northview, supra,* 44 Mich App at 618–619. The instant case illustrates the propriety and wisdom of such an approach. However, this does not mean common questions of law or fact need not "predominate". Whether such questions do indeed predominate may ·well determine whether the trial court abused its discretion. At

"(1) the prosecution of separate actions by or against individual members of the class would create a risk of

"(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

"(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests, or

"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole, or

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

this time, we need not finally decide if this is so. In fact, we need not decide what "predominate" means in this context and, if it does apply, we need not bind or sever ourselves from Federal decisions resolving this question in light of FR Civ P 23. Although the strict technical requirement of a "predominant question of law and fact" might not exist under GCR 1963, 208.1(3), as it does under FR Civ P 23, in reality such a requirement may well exist as a measure of trial court discretion. At this point in time, this writer believes that this may well be so. However, it may also be true that the true requirement of a "predominant" question of law and fact exists in GCR 1963, 208.1(3) as in FR Civ P 23.

Is there a common question involved in the instant action? No decision has been discovered in this jurisdiction which interprets GCR 1963, 208.1(3) so as to control the resolution of this issue.

Prior to the adoption of GCR 208, class actions were governed by Rule 16 of the Michigan Court Rules of 1945. When the general court rules were adopted the requirements of former Rule 16 were incorporated into GCR 208. In essence, the former and present rules are largely the same. See 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), pp 600–601. Therefore, a brief review of decisions interpreting Rule 16 may aid in the resolution of the instant problem.

*Palmer Park Theatre Co v City of Highland Park,* 362 Mich 326; 106 NW2d 845 (1961), involved a class action brought under former Rule 16. There, three named plaintiffs brought a class action on behalf of themselves and all others similarly situated asking the court to declare a particular section of a city ordinance invalid. On appeal the Supreme Court had to decide whether

the trial court erred in dismissing the action as a class action. The trial court had held that the case was not a proper class action on the theory that the members were not similarly situated. In affirming the lower court's ruling to dismiss the class action, the Supreme Court stated:

"The trial court in the instant case had before it separate rather than joint actions and would have needed proofs with particular reference to the effects the ordinance would have upon each of the members of the class. No such proofs were offered. Therefore, he correctly decided this was an improper class action." 362 at 344.

In this opinion the Supreme Court cited at length excerpts of their previous opinion in *Bajorek v Kurtz,* 335 Mich 58; 55 NW2d 727 (1952). The Court did note that although *Bajorek, supra,* dealt with reference to the statutory provision dealing with permissive joinder (1948 CL 608.1) rather than GCR 16, the same rules of law would apply.

In *Bajorek* the Michigan Supreme Court was concerned with the substantive law relative to claims for damages for nuisance and the context of the proper procedural means for adjudicating the claims. Therein, multiple plaintiffs sought damages for alleged nuisance caused by the conduct of a cement and concrete factory. The Court explained at 64:

"We have a situation presented in which a number of persons assert that they have been injured severally in their property rights because of improper and unlawful acts on the part of defendants. It cannot be said with certainty that the same issues will be presented in all of the 25 cases alleged in the declaration and covered by the bill of particulars. Proofs may show damage in some cases but not in others, and defenses may exist

against the rights of certain plaintiffs that are not available against other plaintiffs."

Moreover, the Court stated earlier at 63:

"Each of the plaintiffs is asserting the right to recover damages from the defendants because of alleged improper conduct on their part. Reference to the bill of particulars filed indicates that some plaintiffs are seeking to recover for items of damage not asserted by other plaintiffs. Clearly the plaintiffs are not seeking the same relief, but each is interested solely in the recovery of damages to him and his property that he asserts have resulted proximately from the acts charged against the defendants."

This authority would appear to suggest that there is an absence of a common question in the instant case. In addition, since the plaintiffs here are seeking to recover money damages as to themselves individually they are not all seeking the same relief. Both variables are necessary prerequisites before a class action may proceed under GCR 1963, 208.1(3). Two foreign jurisdictions recently considered the problem of nuisance actions and the propriety of class action relief. The courts in both cases stressed the need for individual adjudication of liability for each claim asserted. *Boring v Medusa Portland Cement Co,* 63 FRD 78 (MD Pa, 1974), *appeal dismissed* 505 F2d 729 (CA 3, 1974), *City of San Jose v Superior Court of Santa Clara County,* 12 Cal 3d 447; 115 Cal Rptr 797; 525 P2d 701 (1974). See also, Anno, *Maintainability in state court of class action for relief against air or water pollution,* 47 ALR3d 769.[5]

---

[5] *See also,* Anno, *Propriety, Under Rules 23(a) and 23(b) of Federal Rules of Civil Procedure, as Amended in 1966, of Class Action Seeking Relief Against Pollution of Environment,* 7 ALR Fed 907 (1971).

The *Boring* decision is particularly fitting to the resolution of the instant appeal. There the court denied plaintiffs' motion to proceed as a class action in a lawsuit involving a nuisance action for damages allegedly caused by air pollution. The court noted at 84–85:

"The size of the proposed class is at least 1,000 persons and likely many more residents of York, Pennsylvania. The air pollution involved is allegedly from *two* sources releasing similar compounds in such a fashion as to raise considerable evidentiary problems. Such problems of proof are greatly increased because each resident, motorist or business is in a different proximity to the plants than the other class members. In effect, *each* plaintiff would have to separately establish what mixture of pollution caused him damage depending on the wind, location of the factories, etc. It is inconceivable that a single ratio of pollution by the two defendants could apply uniformly throughout the class. The plaintiffs would have to individually establish the liability of each defendant, then the respective roles of the defendants vis-a-vis each other.

*     *     *

"The proposed class not only consists of wholly distinct degrees of damage, but wholly different types of damage. The only common fact is the allegation that their damages are caused by the same sources. The nature of the differing injuries runs the gamut from damage to fee simple and leasehold interests in real estate to damaged personalty, unpleasant surroundings and an unsightly environment. Moreover, many of the named plaintiffs claim to have suffered compensable personal injury.

"The plaintiffs contend that the overriding common fact is the liability of the defendants. Once that is established, the plaintiffs argue, the class members merely need line up to put in their specific claims. However, the very nature of the claims makes a single finding of liability impossible. At best, liability would have to be established as to several already apparent

sub-classes. The showing of excessive quantities of pollutants hardly establishes liability as to home damage *and* personal injury. The very experts needed would be totally distinct. Furthermore, the class members are geographically dispersed in such a fashion that it is unlikely that any large group suffered the same quantity of 'fall-out'. Liability cannot be established in a single mass proceeding. Perhaps the output and chemical composition of the pollution is subject to a single answer in that experts might establish the degree of pollution from the sources in concentric circles outward. In such a fashion each plaintiff might then need only indicate the zone in which he worked or lived and thereby establish the quantity of pollution to which each was subject. Such a timesavings of a common question is illusory in view of *Blonder-Tongue [Laboratories, Inc v University of Illinois Foundation,* 402 US 313; 91 S Ct 1434; 28 L Ed 2d 788 (1971)], *supra,* and *Katz [v Carte Blanche Corp,* 496 F2d 747 (CA 3, 1974) (Civ No. 72-1054, March 15, 1974)], *supra.* More important, far too many completely *uncommon* questions of fact would thereafter require resolution on a case by case basis. Superimposed on the entire matter is the fact that two defendants are facing liability with each exhibiting competing interests." (Emphasis in original.)

This case fully illustrates the problems involved in allowing a nuisance case to proceed as a class action. This is particularly so in the case at bar where there are four defendants, each of which presumably produces similar and dissimilar emissions. In *Boring, supra,* the factual setting involved two sources of air pollution and both sources emitted similar compounds. Even with this similarity of emissions or possible sources of pollution the court therein held that the mere fact that two sources were involved increased the lack of common or controlling questions. In the case at bar where four sources are involved, which presumably emit disimilar emissions, there are more com-

pelling reasons to disallow a class action than there were in *Boring.*

Similarly, the California Supreme Court in *City of San Jose, supra,* disallowed class action treatment to a nuisance action brought by landowners for damages caused by overflights of airplanes approaching an airport. The Court ruled that there were not sufficient common issues of law and fact to allow the action to be treated as a class action because liability could be established only on a case by case basis. No one factor was deemed to be determinative of all property loss because of the relative location of adjacent railroad tracks, industrial facilities and highways.

Moreover, in rejecting the possibility of categorizing the plaintiffs in sub-classes for trial purposes the Court explained:

"Given the many recognized factors combining to make up the uniqueness of each parcel of land, the number of subclassifications into which the class would be required to be divided to yield any *meaningful* result would be substantial. Then, because liability is here predicated on variables like the degree of noise, vapor, and vibration, the problem is compounded by the factors of distance and direction affecting these variables. The result becomes a statistical permutation, and the requisite number of subclassifications quickly approaches the total number of parcels in the class. Under such circumstances, there is little or not *[sic]* benefit in maintaining the action as a class.

"Conversely, these uniqueness factors weigh heavily in favor of requiring independent litigation of the liability to each parcel and its owner. Because liability here is predicated on the impact of certain activities on a particular piece of land, the factors determinative of the close issue of liability are the specific characteristics of that parcel. The grouping and treating of a number of different parcels together, however, necessarily di-

minishes the ability to evaluate the merits of each parcel. The superficial adjudications which class treatment here would entail could deprive either the defendant or the members of the class—or both—of a fair trial. Reason and the constitutional mandates of due process compel us to deny sanction to such a proceeding." (Emphasis in original.) *City of San Jose, supra,* 12 Cal 3d at 462; 525 P2d at 711.

The Court in *San Jose* found an abuse of discretion on the part of the trial court in allowing this case to proceed as a class action.

The California case of *Diamond v General Motors Corp,* 20 Cal App 3d 374; 97 Cal Rptr 639 (1971), again affirmed the dismissal of an action commenced on behalf of residents of Los Angeles County against a number of industrial corporations and municipalities for injunctive relief and for damages caused by alleged pollution. Part of the Court's decision was based on the fact that the size of the class rendered the action unmanageable.[6] However, the greater part of the Court's decision was based on the nature of the claims for damages by the individual claimants. The Court stated that the right of each claimant to recover, as well as the amount of his damages recovered, would necessarily depend upon issues required to be litigated between individual plaintiffs and individual defendants. The Court stated:

---

[6] The facts in *Diamond* were extreme. The class action was brought on behalf of all residents of Los Angeles, California, against 293 named industrial corporations and municipalities and 1,000 additional unnamed defendants. *See,* however, *Boring v Medusa Portland Cement, supra,* where the size of the class seeking relief was at least 1,000, however, there were only two defendants. That court also found the action unmanageable. *Boring, supra,* 63 FRD at 84. *See also, Reader v Magma-Superior Copper Co,* 110 Ariz 115; 515 P2d 860 (1973), *Harrell v Hess Oil & Chemical Corp,* 287 So 2d 291 (Fla, 1973), *Evans v St Regis Paper Co,* 287 So 2d 296 (Fla, 1973); all of which found class action was not an appropriate device in suit for damages resulting from defendants' alleged pollution of air or water.

"Whether an individual has been specially injured in his person will depend largely upon proof relating to him alone—going to such matters as his general health, his occupation, place of residence, and activities." 20 Cal App 3d at 379.

Plaintiffs herein claim damages on the basis of nuisance. In an action for nuisance interference with plaintiffs' use and enjoyment of their property must be sufficient to be definitely annoying and offensive to normal persons in the immediate locality. This interference must be continuous or recurring frequently and such as to cause harm to plaintiffs. Defendants' conduct must be negligent or unreasonable and a proximate cause of plaintiffs' injuries. *Awad v McColgan,* 357 Mich 386; 98 NW2d 571 (1959).[7]

Liability and damages can be established only in cases of private rather than public nuisance.[8] *Plassey v S Loewenstein & Son,* 330 Mich 525; 48 NW2d 126 (1951). This has long been the law in Michigan. *Board of Water Commissioners of Detroit v Detroit,* 117 Mich 458, 461–462; 76 NW 70 (1898). See also, *Morse v Liquor Control Commission,* 319 Mich 52; 29 NW2d 316 (1947), *McDonell v Brozo,* 285 Mich 38; 280 NW 100 (1938), and *Lepire v Klenk,* 169 Mich 243; 134 NW 1119 (1912). A plaintiff seeking to establish liability against a defendant on the basis of nuisance must

---

[7] *See, generally,* Restatement of Torts, §§ 822–831, pp 226–265; 58 Am Jur 2d, Nuisances, §§ 19–40, pp 580–605.

[8] The distinction between these two forms of action has been succinctly stated as follows:

"The difference between public and private nuisances is that a public nuisance affects the public at large, and a private nuisance, an individual or a limited number of individuals only. * * * No doubt a nuisance is public if it affects the entire community or neighborhood, or any considerable number of persons, or if it occurs in a public place or where the public frequently congregate or where numbers of the public are likely to come within the range of its influence." 58 Am Jur 2d, Nuisances, § 10, pp 565–566.

prove he was damaged. The Supreme Court has emphasized:

"Nothing in the law of nuisance is better settled than this rule: that the locality and surroundings of the challenged operation or thing become an important factor in arriving at proper judicial decision of existence or nonexistence of an actionable nuisance. That which would be actionable or abatable in one place or locality might not be such in another." *Obrecht v National Gypsum Co,* 361 Mich 399, 417; 105 NW2d 143 (1960).

The existence of nuisance depends on all of the attending and surrounding circumstances, and each case necessarily depends on its own facts.[9] This is not to say that nuisance cannot ever be the basis for a class action. Nevertheless, it illustrates the problems inherent in such an action grounded in nuisance.

The instant case under present conditions displays such complexity of issues and facts as not to constitute a suitable case for class action resolution. The multiplicity of plaintiffs and their basis for suit, the nature of defendants' operations and geographic locations, as well as of nuisance liability compel a finding that there is *no* common question of law or fact herein. To find, as the trial court did, that a common question exists, to wit: whether the discharge of pollutants into the air by defendants constitutes nuisance as to plaintiffs, is error. The observations of a sister court are particularly appropriate herein:

"Class actions are provided only as a means to enforce substantive law. Altering the substantive law to

[9] *See,* 58 Am Jur 2d, Nuisances, § 141, pp 712–714. In *Obrecht v National Gypsum Co,* 361 Mich 399, 417; 105 NW2d 143 (1960), the Court observed that "nuisance may be merely a right thing in the wrong place—like a pig in the parlor instead of the barnyard".

accommodate procedure would be to confuse the means with the ends—to sacrifice the goal for the going." *City of San Jose, supra,* 12 Cal 3d at 462; 115 Cal Rptr at 711.

Count I of the complaint seeking declaratory and injunctive relief pursuant to the Environmental Protection Act of 1970, MCLA 691.1201, *et seq.;* MSA 14.528(201), *et seq.,* may survive. Defendants appear to concede the propriety of a class action as to this count. However, the maintenance of a class action asserting nuisance liability herein and damages to the individual plaintiffs was improper.

It may well be possible to divide this action into several class actions involving plaintiffs similarly situated and similarly affected by the actions of a particular defendant or combination of defendants. Possibly plaintiffs living in a particular area may well be damaged by the same actions to such an extent that there is a common question of fact sufficient to allow a class action to proceed. Certainly this would facilitate resolution of this dispute. Not only would this serve the convenience of the parties, it would also result in prompt efficient judicial administration. See *Kass v H B Shaine & Co, supra,* at 107. The class action device should be available to allow those who would otherwise go begging for justice to press their complaints. It is recognized that many of the plaintiffs herein may well be unable to economically assert their claims absent a class action. Nevertheless, some control over the nature of these actions should also be observed. This writer also commends those trial judges who are willing to grapple with difficult procedural questions. It is hoped that the problems present herein can be resolved by dividing this action into manageable actions, a matter which

requires inspired thinking by both counsel and bench.

This writer would remand to allow plaintiffs an opportunity to amend their pleadings and hopefully divide this action into manageable actions characterized by common questions of law and fact sufficient to allow prompt and proper resolution of these matters.

This writer votes to reverse and remand to the trial court for further proceedings consistent with this opinion.